And an opinion in this court later followed and used substantially the same language, viz., that the happening of the thing—the blowing out of a fuse in a street car—"was enough to throw the burden of explaining the cause of the accident upon the defendant." Williams v. N. Y. & Queens Co. R. Co., 97 App. Div. 133, 89 N. Y. Supp. 669.

Now, though it be true that the use of the terminology or phrase of shifting the burden to the defendant is crude and unscientific, if not wholly incorrect and misleading, it does not seem on the whole that it presents any error in this case. It conveyed a meaning to lay minds which did no harm. In truth and in law there is no shifting of any burden to the defendant at all at any time or in any case. The plaintiff cannot shift his burden to the defendant. The plaintiff must make out a case to avoid being nonsuited, and then the defendant must take up his own burden to meet that case; and that is all there is of it either loosely or scientifically. Nothing that was on the plaintiff is shifted onto the defendant. But if judges on appeal in taking time and deliberation to write their opinions use such an expression, how are we to expect that county judges shall not do the same in their unprepared oral utterances in charging juries? We cannot apply a rule of perfection to their utterances or to trials of causes; we no more than any of the sons of men are capable of conforming to such a rule ourselves.

If the defendant's counsel wanted the court to charge the other rule (which it had omitted to charge), viz., the rule as to the burden being on the plaintiff to make out his case by a preponderance of the evidence in his favor over that in favor of the defendant—which is entirely distinct from the general rules of evidence which govern the progress and stages of the trial—he should have requested that it be charged. Instead, he took an exception to a specific sentence in the judge's charge which was not on that head at all. The whole case shows conclusively that the defendant was not harmed by the unscientific use of language into which the learned trial judge was misled.

The judgment should be affirmed.

Judgment and order of the County Court of Queens county affirmed, with costs. All concur.

---

### HUNT v. NORTHERN CENT. RY. CO. et al.

(Supreme Court, Appellate Division, Third Department. January 8, 1908.)

1. BENEFICIAL ASSOCIATIONS—BY-LAWS—CONSTRUCTION.

Under regulations governing a voluntary relief fund that members shall be entitled to benefits while disabled by accident, and that there must be exterior or other positive evidence of injury and satisfactory evidence that it renders the member wholly disabled to labor, or when of a permanent character to earn a livelihood in an employment suited to his capacity, benefits are payable to a member wholly disabled to labor on account of temporary injury, or unable to earn a livelihood in an employment suited to his disabled capacity, where his injury is permanent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Beneficial Associations, § 42.]

2. SAME—ACTIONS—BURDEN OF PROOF.

In an action for benefits under a voluntary relief fund, the burden is on the member to show that the decision of the medical examiner that he was able to earn a livelihood, approved by the superintendent of the relief fund, was not justified.

3. SAME—CHANGE OF BY-LAWS.

Where a member of a voluntary relief fund by his application agreed to be bound by the regulations of the fund then existing and by any other regulations thereafter adopted, and the regulations of the fund provided that a member was bound by proper amendments and by-laws, an amendment of a by-law that questions as to the permanent character of disability and the continued payment of benefits should be determined by the advisory committee so as to provide that, in case of a disablement of a permanent character, benefits would cease when the member shall be declared by the medical examiner as able to earn a livelihood in an employment suited to his capacity with a right to appeal to the superintendent of the fund and the advisory committee, was reasonable, and violated no rights of the member.

Appeal from Special Term, Broome County.

Action by Frank M. Hunt against the Northern Central Railway Company and another. Judgment for plaintiff, and defendants appeal. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Diven & Diven, for appellants.

A. D. & G. P. Wales, for respondent.

JOHN M. KELLOGG, J. Plaintiff, while a member of the Pennsylvania Voluntary Relief Fund, so called, which is administered by the defendants, lost his arm by accident while in the service of the Northern Central Railway Company. The Pennsylvania Voluntary Relief Department maintains a fund which is contributed by its members for the relief of members sustaining injury while in the service of the Pennsylvania Railroad or its subsidiary companies. The regulations governing the relief fund provide, among other things:

"42. Members will be entitled to the following benefits: First, payments while disabled by accident in the company's service for each day during a period not longer than fifty-two weeks, at the rate of fifty cents a day for a member of the first class, and of a greater amount for members of the other classes, in proportion to their contributions, and at half these rates after fifty-two weeks and during the continuance of the disability."

Regulation 45 provides that, in order to be entitled to benefits, "there must be exterior or other positive evidence of injury, and satisfactory evidence that it renders the person wholly disabled to labor, or when of a permanent character to earn a livelihood in an employment suited to his capacity. Disablement from accident occurring otherwise than as aforesaid will be classed with sickness." The accident to plaintiff occurred March 7, 1904, and he was paid out of the relief fund $1 per day, the amount applicable to his membership, up to February 1, 1905. On January 3, 1905, the medical examiner notified him that under regulation 45, as to permanent disablement, his benefit would cease February 1, 1905. After this, correspondence was had by the plaintiff and his counsel with the officers of the relief fund, and the

superintendent of that department approved the action of the medical examiner, and further correspondence resulted in the plaintiff's appealing the matter to the advisory committee, which appeal was authorized by the regulations governing the department.  Plaintiff, after said appeal was brought and before its determination, withdrew the appeal, and the action of the medical examiner, affirmed by the superintendent, stands unappealed from and unreversed.  This action was begun July 21, 1905, and thereafter the defendant Northern Central Railway Company notified the plaintiff that his furlough had terminated, and, unless he returned to work at a time stated, he would cease to be an employé of the company.  If he ceased to be an employé of the company, he would cease to be a member of the relief fund, except so far as the liabilities were fixed with reference to his accident. Thereafter, and, as we assume, under the advice of counsel, the plaintiff returned to work, and was given employment as a carrier of despatches or messages from one place to another at a salary of $40 per month.  Before the injury he earned $75 per month as flagman. A member of the relief fund may retire upon giving written notice, but until such retirement the company deducts five cents a day from his wages, and pays it into the relief fund.  Plaintiff continued in such employment for a little over two months, and upon the monthly settlements the five cents per day was deducted from his wages for the relief fund, and he signed vouchers for the payments in which was recited the amount deducted and paid to the relief fund.  Thereafter he demanded repayment to him of the moneys so deducted and paid to the relief fund, which being refused he left the defendant's employ.  At the time he became a member of the relief fund section 45 of the regulations provided:

"Questions as to the permanent character of disability and the continued payment of benefits on account of the same shall be determined by the advisory committee."

Before the plaintiff's injury, this regulation was amended so as to provide that, in case of a disablement "of a permanent character, benefits will cease when a member shall be declared by the medical examiner as able to earn a livelihood in an employment suited to his capacity."  The plaintiff's contention is that this case must be governed by section 45 of the regulations as it existed when he became a member, and that the words, "to earn a livelihood in an employment suited to his capacity," refers to his capacity as it existed prior to the time of the injury, and not at the time when he is claiming benefits on account of his disablement.  This voluntary relief fund is not an indemnity or accident insurance company, but is the administration of a fund created by the members themselves to relieve an unfortunate member during the time when by accident he is prevented from earning a livelihood.  The provision of section 43 that the payments are "while disabled by accident," together with the provisions of section 45, show that the payments are to a person wholly unable to labor on account of a temporary injury, or who is unable to earn a livelihood in an employment suited to his disabled conditions where his injury is permanent.

The plaintiff's right to the benefits then depend upon the question whether upon February 1, 1905, he was able to earn a livelihood in an employment suitable to his capacity as it then was. The medical examiner determined that he was, the superintendent approved of the determination, and, if the plaintiff was dissatisfied with that determination, he had the right to appeal to the advisory committee. In his application for membership he expressly agreed "to be especially bound by regulation No. 65, providing for final and conclusive settlements of all disputes by reference to the superintendent of the relief department and an appeal from his decision to the advisory committee." After having brought the appeal to the advisory committee, he waived its benefits. The fact that later he entered the employ of the company at $40 per month shows that he was not entirely disabled, and that a calling suitable to his capacity was offered to and accepted by him, and was afterwards rejected without reasonable cause. The evidence discloses no fact tending to show that the plaintiff was disabled from earning a livelihood, except the fact that he was a one-armed man. The burden at least rested upon him to show that the decision of the medical examiner approved by the superintendent was not justified.

So far we have not considered the amendment to the by-laws made after the plaintiff became a member of the association, for the reason that the amendment does not substantially change the plaintiff's rights. In the original by-law the advisory committee was to determine as to the continuance of benefit. Under the amended by-law the medical examiner was to make such determination, with a right to appeal to the superintendent and the advisory committee. These were matters as to the internal management of the fund or association of which the plaintiff was a member, and by his application for membership he agreed to be bound by the regulations of the fund as it then existed and by any other regulations thereafter adopted, and the regulations of the fund also provides that he is especially bound by proper amendments and by-laws. The amendments were reasonable, and violated no rights of the plaintiff. Wright v. Knights of Maccabees (decided at the November term of this court) 106 N. Y. Supp. 1150. As stated before, the record is without evidence that the plaintiff is unable to earn a livelihood in an employment suited to his capacity, and therefore he has failed to establish a cause of action.

The judgment should therefore be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event. All concur; COCHRANE, J., in result, on the ground that plaintiff should have exhausted his remedy within the organization before resorting to the courts.