## BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN v. HASSELL.

### No. 11085.

Court of Civil Appeals of Texas. Dallas.

Dec. 10, 1932.

Rehearing Denied Jan. 14, 1933.

John T. Suggs and R. W. Stoddard, both of Denison, for appellant.

Webb & Webb, of Sherman, for appellee.

VAUGHAN, J.

Appellee, as plaintiff in the court below, filed his suit against appellant, as defendant, on the 23d day of April, 1930, to recover from the relief fund of appellant $50 per month on account of becoming totally and permanently disabled or incapacitated from performing all manual labor on account of sustaining the loss of his left hand by amputation or actual separation at or above the wrist joint, due to and caused by an injury received December 14, 1927.

### History of Appellant Order and the Nature and Result of the Suit.

Appellant is a voluntary association, primarily a labor organization, and was created in 1873. It is composed of a Grand Lodge and about 1,000 subordinate lodges scattered throughout the United States, with a total membership of about 100,000. The appellant organization has a representative form of government, divided into local lodges with ritualistic form of work, and is not operated for profit. Its objects are to serve generally the interests and welfare of its members, and to provide a measure of protection against the disasters that overtake them in their hazardous callings. There is included protection by way of life insurance, indemnity on account of loss of a member by amputation; and since 1926 a relief department has been established for the benefit of members wholly disabled by disease or injury and in case of superannuation. Since the organization of this department in 1926, 143 payments have been made on account of loss of members by amputation, and about 30,-640 claims under the total disability provisions. Its rules providing for total disability benefits are as follows: "A member of the Relief Department in good standing upon the books of the Grand Lodge becoming totally and permanently disabled or incapacitated from performing all manual labor on account of Bright's disease of the kidneys; uncompensated valvular disease of the heart; progressive pernicious anemia; permanent paralysis of either extremity, locomotor ataxia; total deafness in both ears; arthritis deformans; diabetes, cancer, or sustaining the loss of a hand by amputation or actual separation at or above the wrist joint, or the loss of a foot by amputation or actual separation at or above the ankle joint, or becoming totally and permanently blind in one or both eyes, shall be entitled to receive from the Relief Fund of the Organization fifty dollars ($50.00) per month. Payments of this amount to be continued so long as the member continues to be totally and permanently disabled from performing all manual labor."

In 1914, appellee, engaging in railroad work having to do with the operation of locomotives, became a member of the appellant organization, and such membership thereafter continued. He procured insurance against loss of a specific member by amputation, and also became a member of the relief department and was entitled to disability benefits coming within the coverage of its provisions. On December 14, 1927, he suffered an injury resulting in the loss of his left arm by amputation at or near the shoulder joint, and on account of which the appellant paid him, under his specific loss certificate, the sum of $3,000. On April 23, 1930, he filed this suit, seeking a recovery under the total disability provisions above set forth. He alleged his membership with appellant and the payment by him of all dues necessary to maintain him in good standing. He alleged that in consequence of the loss of his arm, he became totally and permanently disabled from performing any and all character of manual labor. He alleged the making of demand for payment and proceeding otherwise in conformity with the laws of the Order, and the rejection of his claim by its authorized officers. Recovery at the rate of $50 per month from the date of the accident was prayed for, and also that the judgment condemn appellant to pay him $50 per month as long as he lived. Appellant answered by a general demurrer and general denial, and pleaded the payment of the specific indemnity for the loss of the arm. The jury, by their verdict, found that appellee's injury had resulted in his total incapacity to do all manual labor, and that said incapacity was permanent. On this verdict, judgment for appellee was rendered on the 23d day of March, A. D. 1931, for $1,966.65, from which appellant duly prosecuted this appeal. Under the view we take of this case, we find it only necessary, in order to dispose of this appeal, to herein discuss appellant's first proposition, viz.: "Appellee, being entitled to recover under the allegations of his petition and under the provisions of the laws of his order only in case of his being totally disabled by the loss of his arm from performing any and all labor, and his own evidence definitely negativing such incapacity, he was not entitled to recover, and the requested peremptory instruction to the jury to return a verdict for the defendant should have been given." And second proposition, viz.: "Even though the evidence might support a find-

ing that performance of appellee's work as truck driver and operator was attended by some pain or discomfort, as the result of the loss of his arm, yet he would not be entitled to recover under appellee's laws, which awarded him relief only in case of his being totally incapacitated, and the requested peremptory instructions to the jury to find a verdict for the defendant should have been given." The following facts were indisputably established by the evidence adduced by the testimony of appellee and his witnesses, viz.: That the stub of appellee's arm having healed 92 days after the injury, he engaged in the trucking business; that he invited the patronage of the public generally; that he established a location where he might be found and where there was a telephone available for his service; that he was employed with his truck by the city of Denison, by the Kraft-Phoenix Cheese Company, by V. C. Hardy, another truck line operator, and by contract for the handling of all the freight in and out of Denison over the Missouri, Kansas & Texas line of railroads in the store to store or pick up service; that sometimes he drove the truck and sometimes another drove it, that he drove it whenever occasion demanded; it was just a question of who got under the wheel, if he got under the wheel first, he would drive, and if the other fellow got under the wheel first, he would drive. He further testified that he drove the truck home at night and back to work in the morning; that he drove it between Denison and Dallas. The evidence further established, without conflict in its terms, that appellee was regularly engaged in the trucking business, fully qualified to carry on alone an essential part of it, driving the truck, and loading same with small packages; that he hauled for the public generally, and for concerns under regular contract; furthermore, no testimony was introduced from any source showing an occasion where the services of appellee and his truck were called for that he found himself unable to give same the needed attention. That from the date appellee was injured, December 14, 1927, to the date his wound had completely healed over, covered a period of 92 days during which he was totally disabled from performing all manual labor. Appellant promptly paid appellee the sum of $3,000, to which he was entitled under the provisions of his specific loss certificate. The provision of appellant organization providing for total disability benefits applicable to the claim of appellee, asserted thereunder, eliminating all other grounds for total disability benefits, reads as follows: "A member of the Relief Department in good standing upon the books of the Grand Lodge becoming totally and permanently disabled or incapacitated from performing all manual labor on account of * * * sustaining the

loss of a hand by amputation or actual separation at or above the wrist joint, * * * shall be entitled to receive from the Relief Fund of the organization Fifty dollars ($50.00) per month. Payments of this amount to be continued so long as the member continues to be totally and permanently disabled from performing all manual labor."

### Opinion.

Appellant duly requested the court to peremptorily instruct the jury as follows: "In this case, you are instructed to return a verdict in favor of the defendant." This charge, given in terms requested, would have been error, as, under the undisputed facts, appellee was entitled to recover for 3 months and 2 days "total * * * disability from performing all manual labor"; however, the charge was sufficient to call the court's attention to this phase of the case, and to the further situation that appellee was not entitled to recover any further sum, as the evidence conclusively established that beyond said period of 3 months and 2 days appellee had not "become totally and permanently disabled or incapacitated from performing all manual labor on account of * * * sustaining the loss of a hand by amputation or actual separation at or above the wrist joint," within the meaning of the rules of appellant's organization, supra, providing for total disability benefits, in addition to the fixed indemnity sum of $3,000 payable on account of the loss of appellee's left arm; therefore, the trial court should have peremptorily instructed the jury to return a verdict in favor of appellee only for the sum of $153.33. The instant case is predicated upon contractual relations, and therefore the broad legal rules of construction, applied to the provisions of the Workmen's Compensation Law (title 130, R. C. S. 1925, art. 8306 et seq., as amended) to accomplish the purpose for which same was enacted, do not apply to this case; as each case of this character must be determined under and by the plain and comprehensive provisions of the benefit certificate or laws of the Order forming the coverage and the facts upon which is based a claim for benefits. The rule is laid down in 1 Corpus Juris 466, § 169, to be: "The phrase 'total inability to labor' means a total disability to earn a livelihood at any employment, and if the insured, although unable to earn a livelihood at the particular labor at which he was engaged at the time of the injury, is capable of making a living at some other employment, he may not recover." In the case of Buckner v. Jefferson Standard Life Ins. Co., 172 N. C. 762, 90 S. E. 897, it is said: "The authorities are practically unanimous that under the terms of this policy plaintiff cannot recover without showing a bodily injury that will incapacitate him, not only from follow-

ing his usual avocation of fireman, but also from pursuing any other gainful occupation. The language is too plain, and the meaning too unmistakable, to permit an enlargement of the terms of the contract by construction. It ·is unfortunate for the plaintiff, but 'it is so nominated in the bond.'" To the same effect, see Metropolitan Life Ins. Co. v. Wann (Tex. Civ. App.) 28 S.W.(2d) 196. This case was reversed by the Supreme Court only on the ground that the master policy was not introduced in evidence. See 41 S.W.(2d) 50. Lyon v. Railway Passenger Assurance Co., 46 Iowa, 631; Hunt v. Northern Central Ry. Co., 124 App. Div. 43, 108 N. Y. S. 267; Vol. 4 Cooley's Briefs p. 3293; Joyce on Insurance (2d Ed.) Vol. 5, art. 3031. There is not presented by this suit an accident insurance policy issued by a company governed by its board of directors and executive officers, and engaged in the business for profit. In such a case, the form of policy is prescribed by the company, its premium rates are fixed at a figure which, based on long and completely kept statistics, will insure a fund out of which all losses and claims may be paid, commissions to agents, taxes, expense of claim adjustments, administrative expenses, and all other charges and payments that must be met by such a company, and still leave a margin of profit for the stockholders of the corporation. Men engaged in engine and train service are either excluded from commercial stock companies as prohibited risks, or the same objective is reached by the premium rates which are, for all practical purposes, prohibitive. The very conditions that deny to these men the insurance protection that is afforded to those in less hazardous callings, must increase the difficulties attending the solution of their own problems. The outstanding objectives to be attained are, first, protection' to dependents in case of death; second, the protection of the individual in case of loss of a member with the consequent decreased ability to labor; and, third, the protection of the individual for periods during which he is wholly disabled from performing all manual labor. These objectives must be attained by the members of the Brotherhood and the measure of protection is inexorably limited by the source from which it must come; the wages of the men themselves. It inevitably follows that the measure of this protection 'must be adjusted to or limited by their ability to pay. Presumably, they are in possession of statistics and records pertaining to death of and injury to men employed in this line of railroad work. It is reasonable to presume that the members of the Order, through their representatives, would like to provide a generous death or dismemberment benefit at a cost which could be met by the insured out of his wages; and to provide a generous benefit if one of their members should become permanently disabled from performing the duties of his employment, as is frequently the case in the commercial policies, but cannot accomplish this by the means available. Under the above environments surrounding the creation and maintenance of appellant organization, it may be assumed that in the creation of its style of insurance for protection of its members and their dependents, that the organization provided the best protection possible under the circumstances; and, as applied to disability, there could only be extended, within the limitation of its resources for that purpose to a member, a monthly benefit for periods during which, either from specified disease or injury, he finds himself totally disabled from performing all manual labor. Such payments to be continued so long as a member continues to be totally and permanently disabled from performing all manual labor. Under the above-cited authorities, it will be noted the distinction is clearly drawn between the cases where the coverage is from the disability of the insured and where the indemnity is provided only in case of total and permanent disability or incapacity from performing all manual labor. The conclusion to which we have been 'lead by the careful consideration given to the record of this cause, requires that same be reversed and rendered; it affirmatively appearing from the record that the cause has been fully developed and that no ground exists requiring same to be remanded. Therefore the judgment of the trial court is reversed, and the judgment that should have been, upon a properly instructed verdict, rendered by the trial court is here rendered, viz.: That the appellee recover of and from appellant the sum of $153.33, with interest thereon from April 1, 1928, at the rate of 6 per cent. per annum, and all costs of the court below. That this adjudication is without prejudice to the rights of appellee to institute and prosecute a suit to judgment as a member of the relief department of appellant's Order on account of having become or becoming, at any time after March 23d, A. D. 1931, the date of judgment appealed from, totally and permanently disabled or incapacitated from performing all manual labor on account of having sustained the loss of his left hand through injury sustained by him to his left arm on the 14th day of December, A. D. 1927. It is further ordered and adjudged that as to the costs of this appeal, it appearing from the record that appellant failed to present to the trial court a correctly prepared request for an instructed verdict in its favor as herein pointed out, whereby it is probable that appellant contributed to the error committed by the trial court in not instructing the jury to return a verdict for $153.33 in favor of appellee, we are of the opinion that the costs of this appeal should be, and the same is hereby, taxed against appellant.

Reversed and rendered.