## M. O. HASSELL V. BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN.

No. 6462.    Decided November 20, 1935.
(87 S. W., 2d Series, 468.)

*Webb & Webb,* of Sherman, for plaintiff in error.

The Court of Civil Appeals erred in its conclusion of law that the facts conclusively showed that appellee had not become totally and permanently incapacitated and permanently disabled, beyond a period of three months and two days, from performing all manual labor on account of sustaining the loss of a hand by amputation above the wrist joint, within the meaning of the rules of appellant's organization, providing for disability benefits. Massachusetts Bonding Co. v. Worthy, 9 S. W. (2d) 388; United States Fidelity & Guar. Co. v. Hardeman, 22 S. W. (2d) 1113; Mutual Benefit Health & Acc. Ass'n. v. Bird, 185 Arkansas, 445, 47 S. W. (2d) 812.

*John T. Suggs,* and *R. W. Stoddard,* of Denison, for defendant in error.

Plaintiff, being entitled to recover under the allegations of his petition and under the provisions of the laws of his order only in case of his being totally disabled by the loss of his arm from performing any and all labor, and his own evidence definitely negativing such incapacity, he was not entitled to recover, and the requested peremptory instruction to the jury to return a verdict for defendant organization should have been given. Metropolitan Life Ins. Co. v. Wann, 28 S. W. (2d) 196; Aetna Life Ins. Co. v. McCullough, 191 Ky., 226, 229 S. W., 1033; Buckner v. Jefferson Stand. Life Ins. Co., 172 N. C., 762, 90 S. E., 897; 1 C. J., 466.

Mr. Presiding Judge HARVEY delivered the opinion of the Commission of Appeals, Section A.

The plaintiff in error, M. O. Hassell, instituted this suit against the defendant in error, the Brotherhood of Locomotive Firemen & Enginemen, to recover accrued monthly benefits of $50 per month on account of his being "totally and permanently disabled or incapacitated to perform all manual labor," on account of the amputation of his left arm. The case was tried with a jury, resulting in a verdict and judgment in favor of Hassell for the recovery of the monthly sums that had accrued at the time of the trial. The case was appealed to the Court of Civil Appeals and that court held, in effect, that the testimony in the case conclusively showed that Hassell, at the time of the trial, was not disabled to the extent claimed, but was so disabled for a period of 3 months and 2 days following the loss of his arm. Basing its action on this holding, said court reversed the trial court's judgment and rendered judgment limiting the recovery by Hassell to benefits for 3 months and 2 days. 56 S. W. (2d) 223.

The record discloses that the defendant in error is a voluntary organization—primarily a labor organization of locomotive enginemen—composed of a grand lodge and subordinate local lodges. In 1914, and until sometime in the year 1927, Hassell was actively engaged in the occupation of locomotive fireman. In 1914 he became a member of the organization and was a member in good standing at the time the several events hereinafter mentioned occurred. When he became a member of the organization, a beneficiary certificate was issued to him which, at the time of his injury, entitled him to receive the sum of $3000 in case of his suffering any of the specific injuries named in Section 13 of the Constitution of the organization. Said section, so far as relevant, reads as follows: "Sec. 13(a). A beneficiary member in good standing on the books of the grand lodge sustaining the loss of a hand, by amputation or actual separation, at or above the wrist joint * * * shall receive the full amount of his beneficiary certificate * * *" Hassell was duly paid the full amount of his beneficiary certificate soon after he lost his arm, as hereinafter shown.

In the year 1926, the organization amended its Constitution by adding Section 22 which, so far as need be stated, reads as follows:

"Section 22. (a) The Grand Lodge shall maintain a department to be known as the Relief Department of the Brotherhood of Locomotive Firemen and Enginemen, and all members who

are eligible shall be required to participate therein. * * * (b) A member of the Relief Department in good standing upon the books of the Grand Lodge becoming totally and permanently disabled or incapacitated from performing all manual labor on account of * * * sustaining the loss of a hand by amputation or actual separation at or above the wrist joint, * * * shall be entitled to receive from the Relief Fund of the Organization fifty dollars ($50.00) per month. Payments of this amount to be continued so long as the member continues totally and permanently disabled from performing all manual labor."

This suit concerns Hassell's claim to benefits provided in said Section 22. Hassell became a member of said "Relief Department" in 1926 and was a member in good standing on the books of the Grand Lodge at the time of the occurrence of the accident hereinafter mentioned. In 1927, he ceased to be a locomotive fireman and engaged in the occupation of railroad brakeman. While engaged in performing the work incident to the last mentioned occupation, on December 14, 1927, he suffered an injury resulting in the loss of his left arm, by amputation, at or near the shoulder joint. Hassell was 40 years of age at the time of the trial in March, 1931. The following testimony of Hassell, regarding his disability to perform manual labor, on account of his injury (his testimony in this respect being corroborated by the testimony of other witnesses), was given at the trial:

"The accident occurred in what they call Miller yards near Dallas. * * * The next day (at the hospital) I came to with my arm gone. They took the socket out of my shoulder and then put it back to fill up the hole. (Witness bears his shoulder and shows it to the jury.) They took the socket out and put it back. The shoulder joint was shattered up and it is covered now with holes and pits. * * * Since the amputation of my arm it has been painful all the time. I am not very often without the consciousness of pain. It hurts all through my shoulder, the left shoulder, and there is pain all down through the region of my chest. * * * Since my injury I am a nervous wreck. I cannot do anything without getting excited. * * * When I put any force at all on my body like lifting or pushing or any operation of my body, it makes sharp pains go through my left side. I cannot lift with my right hand without sharp pains in my left side. I cannot push anything without causing those pains to go through there. I would not be exact, but before I was injured I weighed about 185 pounds. The last time I weighed, I weighed 163 pounds. * * * Before I was injured I was in per-

fect health, so far as I know. Since my injury, I have been nervous. * * * When I exert myself now, I get fatigued. The condition of my arm makes me what I call nervous, when I undertake to do anything. I can drive a truck an hour or two steady and get so nervous another man has to take the wheel and drive. I cannot drive a truck or car now for any length of time for the reason that it makes me nervous and weak. I have not sufficient strength to do it with one hand and follow it as a business. It causes me pain all the time. It causes my left shoulder and chest to hurt me. I do practically no work around my truck business. I employ a helper who goes with me. I just operate a truck and have a man or men to help me. * * * A little of every kind of hauling is done with the truck, what is called general hauling. The stuff is lifted on the truck by the helper. I do not load the truck. The helper unloads it. First one and then another will drive the truck. I drive around town a little and maybe one of the helpers will help drive. * * * When I drive I am in the front seat and there will be someone else in the seat with me. Outside of driving the truck occasionally, I have not done anything since I was injured. I have tried to push a load around on the truck and could not do it. * * * I generally have two helpers all the time. They work by the job and not by the day. * * * My truck is a Chevrolet. It is a ton and a half truck. * * * Sometime, if I have a consignment of some kind to haul, like light packages, I will load them myself. * * * I could pick up a chair, a small one, and put it on the truck, and I could take it off the truck, say a chair like this one here in the court room,—an ordinary flat bottomed chair—I could pick that up without difficulty, but I could not continue to do that very long. * * * When I have to handle heavy packages, I get a helper. * * *"

█ Keeping in mind this testimony, we take up Sections 13 and 22 of the Constitution of the organization, for the purpose of ascertaining the meaning of the quoted provisions of Section 22 with respect to the disability of the member. From a consideration of the two sections mentioned, in connection with the character of the Brotherhood as a labor organization, and its general purposes in respect to its members, it fairly appears that both sections regard the member from an occupational standpoint. Both were intended to provide compensation for occupational disability of the member. In the case of Section 13, the occupation in which the member is engaged at the time his beneficiary certificate issues is contemplated—in the present

instance that of railroad fireman—, and the amputation of a hand of the member, at or above the wrist joint, is contemplated as, of itself, incapacitating the member from pursuing such occupation. Whereas in the case of Section 22, the compensation there provided has reference to the physical condition of the member, which results from the amputation of his hand, and which incapacitates him from pursuing any other occupation involving performance of manual labor. This being the case, the degree of incapacity to perform manual labor contemplated by the provisions of Section 22 is such as renders the member substantially incapacitated from pursing any occupation of the sort just mentioned. Commonwealth Bonding & Casualty Ins. Co. v. Bryant, 113 Texas, 21, 240 S. W., 893; Hefner v. Fidelity & Casualty Co., 110 Texas, 596, 222 S. W., 966; Great Southern Life Ins. Co. v. Johnson (Com. App.), 25 S. W. (2d) 1093; Winters Mutual Aid Assn. v. Reddin (Com. App.), 49 S. W. (2d) 1095.

■ We conclude, therefore, that the testimony hereinbefore stated raises a fact issue as to Hassell, on account of his physical condition resulting from the amputation of his arm, being totally and permanently incapacitated, up to the time the case was tried, from performing all manual labor within the meaning of Section 22. That fact issue has been determined by the jury in Hassell's favor.

The brief filed in the Court of Civil Appeals by the defendant in error contains a number of assignments of error, including an assignment raising the question of sufficiency of the evidence to sustain the verdict of the jury. Under the law, we are not authorized to pass on that question. However, all other assignments contained in the brief have received due consideration and they are hereby overruled. The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court in order that the court may pass on the question of sufficiency of the evidence to sustain the verdict of the jury.

Opinion adopted by the Supreme Court November 20, 1935.