INTERNATIONAL BROTHERHOOD OF BOILER MAKERS, IRON SHIP-BUILDERS & HELPERS OF AMERICA, ET AL. V. J. D. HUVAL.

No. 7256.  Decided March 29, 1939.
Rehearing overruled April 26, 1939.
(126 S. W., 2d Series, 476.)

*Frank S. Anderson,* of Galveston, and *Barnes & Barnes,* of *Beaumont,* for plaintiffs in error.

It was error on the part of the trial court in refusing to grant appellant's motion for peremptory instruction, in the face of the testimony of plaintiff that after he was laid off by the Gulf Company, he performed other work that showed his condition did not prevent his performing his daily occupation. County Gas Co. v. General Accident, etc., Corporation, 56 S. W. (2d) 1088; Hinson v. Connecticutt General Life Ins. Co., 83 S. W. (2d) 810; United States v. Spalding, 293 U. S. 498, 79 L. Ed. 617.

Notice was not given within proper time. Delaware Underwriters v. Brock, 109 Texas 425, 211 S. W. 779; Standard Acc. Ins. Co. v. Cherry, 48 S. W. (2d) 755; Leavitt v. International Brotherhood of Boiler Makers, etc., 292 Pac. 928.

*J. R. McDougald, J. R. Beck,* and *Gordon, Sharfstein, Bell & Weinert,* all of Beaumont, for defendant in error.

Where there is a distinction between the provisions of the by-laws and the policy of an insurance company, the by-laws must give way to the policy provision allowing payment for disabilities which incapacitate member from performing his usual occupation. Hassell v. Brotherhood of Locomotive Firemen and Enginemen, 126 Texas 256, 87 S. W. (2d) 469; Metropolitan Life Ins. Co. v. Tessier, 70 S. W. (2d) 209 Metropolitan Life Ins. Co. v. Wann, 130 Texas 400, 109 S. W. (2d) 470.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

On or about March 28, 1934, the defendant in error, J. R. Huval, was a member in good standing of the International Brotherhood of Boiler Makers, Iron Shipbuilders and Helpers of America, which we shall call "The Brotherhood." His daily

occupation or usual occupation at that time and for a long time before that time was that of boiler maker's helper. For several months prior to that time he was in the employment of the Gulf Company at Port Arthur, Texas, in the capacity of boiler maker's helper. This suit was brought by him to recover the sum of $1000 for total and permmanent disability to pursue his occupation of boiler maker's helper, which is alleged to have occurred on or about the date first mentioned. The suit is against the plaintiff's in error, the said Brotherhood and the American National Insurance Company. The case was tried before a jury, on special issues, resulting in a verdict and judgment in favor of Huval. The Brotherhood and the Insurance Company appealed, and the Court of Civil Appeals entered judgment reversing the judgment of the trial court and remanding the cause. 101 S. W. (2d) 1072. The Brotherhood and the Insurance Company applied to this Court for the writ of error claiming that under the facts proved at the trial, the Court of Civil Appeals erred in refusing to render judgment for them. The writ of error was granted. The only question before us is whether the judgment of the Court of Civil Appeals, in the respect that the cause was ordered remanded, should be reversed and judgment here rendered for the plaintiffs in error.

■ In his petition in the trial court, Huval alleged, among other things which need not be noticed at this time, that, on or about March 28, 1934, while engaged in his occupation of boiler maker's helper he became wholly and permanently disabled, by accident, to pursue said occupation. The injury which he alleged he sustained at that time, and which caused said disability, was a bilateral hernia. Support for those averments is found in the statement of facts contained in the record before us. The plaintiffs in error contend that the testimony of Huval, himself, shows conclusively that he was not totally and permanently disabled as he claims. It is true that Huval, on cross examination, admitted that for several years prior to March 28, 1934, he had a single or unilaternal hernia. However he explained that this did not disable him in any degree to perform the work incident to his occupation of boiler maker's helper, but that during that perior of time he had pursued said occupation and was physically capable of performing and did perform the work incident to said occupation. It was also shown that performance of this work required great physical exertion such as heavy straining, lifting and operating extremely heavy tools and appliances, and the like.

It appears in testimony that Huval was discharged by the Gulf Company on March 30, 1934, and that soon afterwards he entered the services of the Federal Government at Port Arthur, in connection with Relief Projects which were being conducted for the relief of unemployed laborers. These services included the canning of meats. Huval testified that performance of these services required no physical exertion or heavy straining. He described the character of work he did. After doing this work for a few weeks he was transferred to another Federal Project; that of digging ditches for drainage purposes. Huval testified that he was engaged in this ditching work for about two months, but that for more than half of that time he served as water boy, and that when he worked at ditch digging he was careful to avoid straining or lifting heavy objects; that in handling his shovel he would fill it about half full of dirt and thus avoid strains; that his work in this service terminated when he was entered as a patient at the War Veteran's Hospital at Legion, Texas, where he still remained a patient at the time this case was tried. The hospital authorities granted him a furlough in order that he might attend said trial. Enough of Huval's testimony has been stated, in substance, to show that a jury question was raised with respect to his claim of total and permanent disability to engage in the occupation of boiler maker's helper. In this connection, it appears in evidence that the Brotherhood is a voluntary labor organization whose members include laborers engaged in the occupation of boiler maker's helpers. The purpose of the organization includes the providing of disability benefits to its members. Section 7 of Article XII of the Constitution and by-laws of the organization reads as follows:

"Section 7. In addition to the benefits provided in Sections 1, 4 and 5 of this article, each member shall be entitled to receive total and permanent disability insurance if he be disabled as a result of accident or disease, and by reason thereof cannot perform his *daily occupation,* he will be entitled to the full sum of One Thousand ($1,000.00) Dollars; * * *." (Emphasis ours.)

This article of the Constitution and by-laws has been in effect ever since September, 1925. Sometime prior to March, 1934, the Brotherhood procured the issuance by the American National Insurance Company of a group insurance policy covering the members of the Brotherhood and this policy was in force during March, 1934. By the terms of the policy, each

member of the Brotherhood was insured in the sum of $1000 against total and permanent disability. Among other provisions the policy provides this:

"If while this policy is in full force and there is no default in the payment of premiums, any insured member who becomes wholly and permanently disabled by accident or disease, so as to be wholly and permanently prevented thereby for life from engaging in his usual occupation, and if satisfactory proof of such disability is furnished to the company, then the company will pay to the insured member or his designated beneficiary the lump sum settlements enumerated below.
"* * *

"For disability (a) 100% of the amount insured, the insurance to be discontinued
"* * *."

The policy also expressly provides:
"The company further agrees that Article XII of the Constitution and By-laws of the International Brotherhood, adopted on the twenty-sixth day of September, 1925, are hereby made a part of this contract the same as if set out herein at length, and the company agrees to be bound thereby and to assume all liability incurred by the International brotherhood thereunder, anything in this contract to the contrary notwithstanding, except in all cases where the policy is more favorable to the Brotherhood than the Constitution and By-laws."

■ It fairly appears from the nature of the Brotherhood, and its purposes in respect to its members, that the term "daily occupation" as used in the by-law provision quoted above, relating to total and permanent disability of a member, means the same thing as the term "usual occupation" as used in the policy provision hereinbefore quoted. As applied to Huval, as a member of the Brotherhood, both terms contemplate the character of labor which pertains to the occupation of boiler maker's helper. Hassell v. Brotherhood of Locomotive Firemen and Enginemen, 126 Texas 256, 87 S. W. (2d) 468.

A second ground is urged as calling for judgment to be rendered in favor of the plaintiffs in error. This second ground is presented in these words:

"When defendant in error alleged that he suffered total permanent incapacity on March 28, 1934, or shortly prior

thereto, and when he pleads that he did not ask for a proof-of-loss blank until June 27, 1934, and that he did not complete and present to the office of the International Brotherhood at Kansas City his proof of loss or claim until July 25, 1934, and when he pleads that proper and timely submission is necessary, and when he pleads that due proof of loss by the policy and the constitution and by-laws in question was required to be submitted to the Kansas City office of the Brotherhood within thirty days after the suffering of total permanent incapacity, and when he pleads that failure to so submit proof and claim by Section 14 of Article 12 of the Brotherhood's Constitution will relieve the Brotherhood of any liability, and when defendant in error fails to allege any facts which could constitute a reason or reasons for delay and alleges no basis which would justify or make the delay alleged reasonable, then the trial court committed prejudicial and reversible error in failing to sustain defendant's special exception No. 9 and special exception No. 10 to plaintiff's trial pleadings, in that plaintiff's trial pleadings show on the face that no cause of action or basis for a recovery had been stated."

It is to be noticed that the matter here presented involves questions going to the failure of the trial court to sustain certain special exceptions to the plaintiff's pleadings. Regardless of whether said special exceptions should have been sustained or not, no useful purpose will be subserved in passing on the matter now. In no event would the action of the trial court, even though erroneous, justify us in rendering judgment for the plaintiffs in error.

The judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause is affirmed.

Opinion adopted by the Supreme Court March 29, 1939.

Rehearing overruled April 26, 1939.