**AMERICAN NAT. INS. CO. v. POINTS.**

No. 12753.

Court of Civil Appeals of Texas. Dallas.

July 29, 1939.

Rehearing Denied Oct. 14, 1939.

Brame & Brame, of Sherman, for appellant.

Webb & Webb and G. P. Webb, all of Sherman, for appellee.

LOONEY, Justice.

William Clyde Points, appellee, sued American National Insurance Company, the appellant, on its policy insuring the life of appellee in the sum of $2,000, payable on death to his wife, and providing that, in the event of insured's total permanent disability, appellant would waive payment of premiums during the continuance of the disability and also pay appellee $20, six months after receipt of due proof of such disability, "and a like sum monthly thereafter during the life of the insured and the continuance of his disability".

Appellee alleged that, on January 6, 1933, his left arm was crushed between the flanges of two locomotive drivers, resulting in the complete loss of the use of that member, and so affected other parts of his body as to produce a total and permanent disability within the meaning of the policy; also alleged that he made due proof of such disability, as provided by the policy, and, in all respects, complied with its terms and demanded that he be granted the benefits provided for total permanent disability, to wit: Waiver of payment of premiums accruing during the continuance of such disability and the payment of $20 per month during life and continuance of disability; alleging that the appellant, denying that appellee had suffered a total permanent disability, refused to pay the monthly indemnities, or waive payment of premiums thereafter maturing during the continuance of such disability—in other words, appellant denied appellee's contention that he had suffered a total permanent disability, and refused to recognize its liability to grant the benefits claimed. Appellee prayed that, on final hearing, he have judgment establishing the fact of his total, permanent disability, within the meaning of the policy, entitling him to the benefits provided in such a situation, that is, a paid-up policy, twenty years from and after its date, without payment of further premiums; judgment for the amount of the accrued monthly indemnities, with 6% interest thereon, aggregating $1,474.12, without prejudicing his right to sue for installments accruing thereafter; a reasonable attorney's fee (alleged to be $500) and 12% penalty as provided by statute.

Appellant's answer contained a general denial and special defenses, among others,

that the injury received by appellee resulted simply in a partial, temporary disability, for which appellant was in no way liable; but if it should appear that appellee is totally and permanently disabled, as contended, such condition resulted from and was brought about by his own negligence in failing and refusing to undergo proper medical and surgical treatment; appellant also alleged an indebtedness due it by appellee, being a loan of $272 on the policy, evidenced by a certificate and an assignment of the policy to secure its payment; alleging that it is not indebted to appellee in any amount whatsoever, but, in the event it is judicially so determined, prayed that the indebtedness be credited as an offset against any judgment that may be obtained against it.

The case was submitted to a jury on special issues; answering same, the jury found that, on January 6, 1933, appellee sustained an injury resulting in total permanent disability while in the course of his employment with the Frisco Railroad; that his disability was not partial or temporary; that he did not fail or refuse to undergo proper medical and surgical treatment, such as an ordinarily prudent person would have undergone to recover from his injuries; that appellee furnished and appellant received, proof of such disability on or about March 14, 1933, and that prior to July 29, 1933, appellee demanded of appellant payment of the monthly indemnities claimed, which was refused; also found that $500 was a reasonable attorney's fee.

After overruling appellant's motion to set aside the verdict, the court entered judgment in favor of appellee for $1,-010.44, the amount of accrued monthly indemnities and interest, less the amount of appellee's indebtedness to appellant; also $500 attorney's fee, to be taxed as cost, adjudged that the policy "is in all things established as fully binding and in effect"; also adjudged that appellee had become totally and permanently disabled by bodily injury or disease, so that he is and presumably will be permanently, continuously and wholly prevented thereby for life, from performing any work for compensation, gain or profit, or from following any gainful occupation; that such disability began on the 6th day of January, 1933, and has continuously existed to the date of judgment, and will continue in the future throughout appellee's life. After its motion for a new trial was overruled, appellant excepted, gave notice of and perfected this appeal.

The findings of the jury, in our opinion, being amply supported by evidence, are adopted as our conclusions of fact on the respective issues. It follows from what has just been said, that we are of opinion the court below did not err in overruling appellant's motion for an instructed verdict, as contended in its fourth proposition and relating assignment.

That it was the imperative duty of the court to submit the case to the jury and that their findings are fully sustained by evidence, we think, become apparent from the short summary of appellee's testimony and that of Dr. Henschen, which will be given. Appellee testified, in substance, that, after being injured on January 6, 1933, he was treated and operated upon twice in a hospital at Sherman and, on March 15, was sent to the Frisco Hospital at St. Louis by Dr. Stout, one of his local physicians; that between March 15 and November 22, he made nine trips for treatment, to the St. Louis Hospital, was operated upon altogether five times, in one of which a bone was removed from his arm; testified that he is unable to lift anything with his injured arm; that any attempt to use same causes pain and a feeling of sickness, is sick most of the time, nervous, sleepless, frequently has fever, suffers pain not only in his arm, but in his shoulder and neck, severe at times, and frequent, standing upon his feet any length of time causes a feeling of weakness; that he is not trained for any occupation other than that of a laborer, and that any effort to labor causes suffering; tried to do farm work, to run a cultivator, but was never able to do anything like a day's work, and during the time that he was on the farm, didn't drive the binder altogether half a day, couldn't drive without pain, and operated the cultivator very little, and made no hand at all around the thrasher.

Dr. Henschen, as will hereafter be shown, testified fully as to the nature and extent of appellee's injuries, and that the same are permanent and calculated to cause pain and fever on the performance of any kind of labor.

The case has heretofore been twice tried, twice appealed, and twice reversed, and on one of the appeals, reported in Tex.Civ.App., 81 S.W.2d 762, at page 767, the following language in point

was used; the court said: "The question of whether or not the injury to appellee's arm constituted total and permanent disability was for the jury to determine, and the court could not say as a matter of law that the injury to the arm did not, as a matter of law, totally and permanently disable appellee." In Hassell v. Brotherhood of Locomotive Firemen and Enginemen, 126 Tex. 256, 87 S.W.2d 468, 471, a similar case, the court said: "We conclude, therefore, that the testimony hereinbefore stated raises a fact issue as to Hassell, on account of his physical condition resulting from the amputation of his arm, being totally and permanently incapacitated, up to the time the case was tried, from performing all manual labor within the meaning of section 22. That fact issue has been determined by the jury in Hassell's favor." To the same effect, see Jefferson Standard, etc., Co. v. Curfman, Tex.Civ.App., 127 S.W.2d 567–573, and authorities cited. We, therefore, overrule the proposition and assignment just considered.

■ Appellant's first proposition is based upon assignments complaining of the refusal of the court to exclude the opinion of Dr. Henschen, expressed as to the permanency and totality of appellee's condition, the contention being that the opinion was inadmissible, because based in part on subjective symptoms related by appellee.

The record discloses that Dr. Henschen was associated with other physicians in the treatment of appellee; beginning on January 7, 1933 (the day after the injury), first and last, made about twelve X-rays of appellee, assisted in the adjustment of broken and crushed bones, in placing appliances, saw appellee almost daily and consulted with the other physicians from time to time. The first X-ray revealed that the lower third of the bone of the left upper arm was broken; not only broken, but fragmented, and the muscles and skin were crushed to such an extent that there was an opening from the outside to the broken bone on the inside; examined the patient several times prior to March 14 and found that the healing was not satisfactory. Appellee was again examined by witness the day before he was called to testify, was X-rayed and given a physical examination; his left arm was found to be about four inches shorter than his right, that there had been no union of the bones; the arm showed many scars from different operations; the lime salts in the bone were being absorbed into the blood stream, and, in the opinion of witness, this would continue until the bone of the arm disappears; that is, of the upper arm, until he will have no bone in the upper arm on the left side; that the bone in the lower arm would never meet with that in the upper arm, and the bone from the upper arm will disappear, leaving a useless arm for any and all kinds of work; that appellee's condition was calculated to cause extreme nervousness and pain on any kind of motion, and might cause fever; that the day before (testifying), witness took two X-rays of appellee's shoulder and upper arm and a small part of the lower arm, including both the shoulder joint and the elbow joint, and expressed the opinion that the condition of appellee was permanent.

The witness was subjected to a long cross examination, testifying in part that, his opinion was formed in part from what he was told and from his own examination, but wound up by saying that he knew appellee was permanently injured, independent of anything he said; that appellee told witness nothing that assisted in the findings made, what appellee said simply confirmed a condition which had already been found by the witness; in other words, the finding and conclusion of the witness confirmed what appellee said.

The testimony of Dr. Henschen has been reproduced somewhat at length, that the basis of his opinion may be understood. We think his testimony shows that the opinion expressed was based upon his own knowledge of the case, as he said "I know that he (appellee) is permanently injured independent of anything he told me". Being asked: "Q. Would you know what exertion or effort would bring on what you saw of swelling and fever and tremors, from your investigation? From what you saw in the X-Ray pictures and what you measured with tape, or would it be necessary without him telling you anything, would it be necessary to resort to what he told you to know that? A. I would know it without any statement on his part." Asked: "Q. Just what was it he told you that would add anything to your diagnosis from objective symptoms, if anything, that would aid you at all or did aid you? A. I don't remember that anything which he told me assisted me in my findings, except what he told me confirmed a condition which I had already found."

If the conclusion can be drawn, in spite of Dr. Henschen's statement to the contrary, that his opinion was based in part on the history of the case and subjective symptoms related by appellee, the opinion, nevertheless, would be admissible. The rule is well settled that the opinion of a physician or surgeon is not rendered incompetent by the mere fact that it is based in part upon a history of the case, or subjective symptoms related by the patient on being examined for the purpose of treatment. See Rogers v. Crain, 30 Tex. 284; Newman v. Dodson, 61 Tex. 91; Wheeler v. Tyler S. E. R. Co., 91 Tex. 356, 43 S.W. 876; Missouri, K. & T. R. Co. v. Rose, 19 Tex. Civ.App. 470, 49 S.W. 133. We therefore overrule appellant's proposition No. 1 and related assignments.

■■ In its second and third propositions, appellant contends that the court erred in admitting, over its objection, and in not excluding on motion, the opinion testimony as to a reasonable attorney's fee for services in prosecuting the suit; the objection being that no predicate was laid, in that, no proof was offered in regard to the amount of services performed by attorneys in prosecuting the case.

Mr. Kone, a practicing attorney, having qualified as an expert, testified, in answer to a hypothetical question, that, in his opinion, a reasonable attorney's fee for such services was $500. The hypothetical question explained fully the nature of the case, referred to the two former trials, appeals, and reversals, the third trial being then in progress, but the answer of the witness was confined to a reasonable attorney's fee for services incident to the trial then in progress. We do not think there was an essential fact stated in the question as a basis for the opinion, that was not a matter of legitimate judicial knowledge, hence we do not think the court erred in permitting the witness to testify as he did, or in refusing to exclude the evidence on motion.

Aside, however, from the reason just stated, we think the action of the court in rendering judgment (including $500 as a reasonable attorney's fee), and in overruling appellant's motion for a new trial complaining of such action, tantamount to fixing $500 as a reasonable attorney's fee in the case, which, in our opinion, the court was authorized by statute to do. Article 4736 provides that, where an insurance company (mentioned in the statute) fails to pay a loss within thirty days after demand, such company shall be liable to pay the holder of the policy, in addition to the amount of the loss, 12% damages "together with reasonable attorney fees for the prosecution and collection of such loss". This Article was amended in 1931, Vernon's Ann.Civ.St. art. 4736, and to the language just quoted, the following was added, which is now a part of the law, to wit: "Such attorney fee shall be taxed as a part of the costs in the case. The court in fixing such fees shall take into consideration all benefits to insured incident to the prosecution of the suit, accrued and to accrue on account of such policy".

■ It is obvious, we think, that the court trying the case is authorized to fix the amount of the attorney's fee and, in doing so, may take judicial knowledge of the entire record, the nature of the suit, the amount in controversy, the fact that the case is prosecuted by an attorney or attorneys, to be viewed in the light of the court's knowledge and experience as a lawyer and judge, and, as the statute provides, shall take into consideration the benefits to the insured, incident to the prosecution of the suit, accrued and to accrue on account of the policy. However, we do not think it would be improper for the court to have before it the opinion of experts, or even to submit the question to a jury; but, in view of the quoted provision of the statute, we think it the exclusive province of the court to have the final say in fixing the amount of the attorney's fee in all cases controlled by the statute in question, and that its action in so doing is subject to review only for an abuse of discretion. We therefore overrule appellant's propositions two and three, and assignments challenging the correctness of the action of the court in regard to the attorney's fee.

The policy in suit provides benefits only for a total permanent disability, and appellee did not seek recovery for a partial or temporary disability. However, appellant plead specially that appellee's disability was only partial and temporary, therefore, no liability existed.

The court submitted the issue specially plead, which the jury answered contrary to the contention of appellant; and it now contends that, in submitting the issue, the court committed reversible error, in that, it improperly placed the burden of proof.

■ The court instructed the jury generally to answer all questions from a preponderance of the testimony, properly defining that phrase, and prefaced each question with the following: "Do you find from a preponderance of the testimony, etc". Appellant insists that, as submitted, the burden of proof improperly was placed upon it. We do not think so. The language of Chief Justice Hall, of the Amarillo Court, in Plains Drilling Co. v. Christy, Tex.Civ.App., 25 S.W.2d 276, 278, in our opinion, is decisive of the question. He said: "It is held that a charge on the burden of proof is not necessary or proper in every case. Davis v. Hill (Tex.Civ. App.) 291 S.W. 681; Id. (Tex.Com.App.) 298 S.W. 526; and in Ford v. Couch (Tex. Civ.App.) 16 S.W.2d 869, it is held that in cases submitted upon special issues, it is not ordinarily proper to charge that burden on any issue is on one party or the other. Texas & P. R. Co. v. Bufkin (Tex.Civ.App.) 19 S.W.2d 343. In cases in which evidence is introduced by the respective parties tending to prove and disprove the issues of fact involved in the cause, occasion does not arise for declaration upon whom the burden of proof rests; for the question then becomes merely one of preponderance of evidence, which is for the decision of the jury under all the evidence introduced, whether this be direct or circumstantial. In such cases a charge upon the burden of proof is more likely to mislead than to give a jury a correct view of their duties. Stooksbury et al. v. Swan et al., 85 Tex. 563, 22 S.W. 963; Tarwater v. Donley County State Bank (Tex.Civ.App.) 277 S.W. 176."

■ Appellee sued and could only recover for a total permanent disability and, when he made out a prima facie case, it devolved upon appellant to rebut same, which could have been done under a general denial; in fact, the special negative plea to the effect that appellee's disability was not total and permanent but only partial and temporary, in effect, was but a general denial, hence we do not think it was necessary for the court to have submitted the negative issues at all. The jury having found that appellee's disability was total and permanent, the inquiry whether his disability was simply partial and temporary is wholly immaterial.

A similar question was presented to this Court in Jefferson, etc., Co. v. Curfman, Tex.Civ.App., 127 S.W.2d 567-573, with reference to which, Chief Justice Bond used the following pertinent language: "Furthermore, in this case, we think, the issue of 'partial disability' merely tends to contradict plaintiff's cause of action on the question of total disability. 'Total disability' and 'partial disability' are directly opposite. The burden was on the plaintiff to plead and prove that the injuries he sustained 'wholly, continuously and permanently' disabled him in the manner above suggested, and if he failed to meet such burden, necessarily, the defense would prevail; on the other hand, if the pleadings and evidence show total and permanent disability, the plaintiff has met the burden necessary for him to recover, therefore, negatives the issue on partial disability. This would be true even if defendant had pleaded and proven that plaintiff suffered no incapacity. The court is not required to submit the same issue twice in different forms."

The negative issues in question being immaterial and superfluous, error, if any, in placing the burden of proof was altogether harmless. We, therefore, overrule appellant's propositions five and six and their related assignments.

■ Appellant also alleged as a special defense that if, at present, appellee is totally and permanently disabled as contended, such disability resulted from his negligence in failing and refusing to undergo proper medical and surgical treatment. The court also submitted that issue, which the jury found against appellant's contention. In its seventh proposition presented in a supplement to its original brief, appellant contends that, in submitting the issue, the court improperly placed upon it the burden of proof. The court prefaced the question as in other instances with the language "Do you find from a preponderance of the testimony, etc." Our discussion of a similar question under propositions five and six and the authorities there cited, are applicable to the question now under consideration.

However, we are of opinion that only a metaphysician, with mind so subtle as to be able "to sever and divide A hair 'twixt north and northwest side" could find where the charge in question placed the burden of proof. But, if appellant be correct, that is, if, on a metaphysical analysis, it is ascertained that the burden of proof on the issue was placed upon it, we think it

properly so placed. The charge was in response to a plea setting up an affirmative defense, and under all the authorities, the burden was upon appellant to establish the same. This doctrine, with citation of authorities, is announced in 17 Tex.Jur., § 95, pp. 319, 320, as follows: "The burden of proof rests upon the defendant in those cases in which he seeks to overthrow the prima facie case made by the plaintiff by proof of some affirmative substantive defense, or in other words to establish any affirmative defense upon which he relies to defeat recovery. * * "

Failing to find reversible error after carefully considering all propositions and assignments urged by appellant for reversal, we affirm the judgment of the trial court.

Affirmed.

### On Rehearing.

In its motion for rehearing, appellant challenges the correctness of the court's conclusions in two respects.

Summarizing the testimony of appellee, bearing on the question whether or not the court erred in overruling appellant's motion for an instructed verdict and in submitting the case to the jury, among other things, we said that appellee "tried to do farm work, to run a cultivator, but was never able to do anything like a day's work, and the five years that he was on the farm didn't drive the binder altogether half a day; couldn't drive without pain, and operated the cultivator very little and made no hand at all around the thrasher".

Appellant insists that we erred in stating, in effect, that appellee was on the farm five years after receiving his alleged injuries, contending that he was on the farm only about two years. On a re-examination of the point under consideration, we find that appellant is correct; the testimony shows that appellee owned the farm only about two years, but our statement in other respects is adhered to as being correct.

In the conclusion stated, we followed rather closely appellee's brief, which stated "that during the five years, he (appellee) was on the farm he didn't drive the binder altogether one-half day. He could not drive the binder without pain. He had pain when he tried to drive it. That he tried to run the cultivator very little during the whole five years. That when he tried to drive the cultivator he was on it something like one half hour. That he

was trying to teach his boy how to work. That he made no hand at all around the thrasher."

Bearing on the point under consideration, appellee was questioned and answered, as follows:

"Q. Will you tell the court and jury whether you ever drove a binder with that left arm? A. No, sir.

"Q. How long did you drive a binder in the five years since you have been hurt? A. Oh, I didn't drive it half a day all put together.

"Q. All put together, the number of hours and minutes that you have driven binders in the last five years is thirty minutes? A. No. Not half a day.

"Q. I thought you said half a day. Well, could you drive the binder without pain? A. No, sir.

"Q. Did you have pain when you tried to drive binders? A. Yes, sir." (S.F. pp. 113, 114.)

While we do not regard the error, in stating the time appellee was on the farm, as of any materiality, yet, for the sake of accuracy, the opinion will be corrected to read that, during the time he was on the farm and tried to do farm work he didn't drive the binder altogether half a day.

In the opinion, we also stated that the record disclosed that Dr. Henschen was associated with other physicians in the treatment of appellee, beginning January 7, 1933, the day after appellee was injured, and, first and last, made about twelve X-rays of appellee's injured arm, assisted in the adjustment of broken and crushed bones, in placing appliances, and saw appellee almost daily and consulted with the other physicians from time to time, etc; that the day before Dr. Henschen was called as a witness, he again examined appellee's left arm, found it to be about four inches shorter than his right arm, that there had been no union of the bone, and also made X-ray pictures. Commenting upon the testimony of Dr. Henschen as a whole, we stated that: "It does not appear that Dr. Henschen examined appellee with a view of testifying, but simply in the course of his professional duty as one of a coterie of physicians having charge of the case". The accuracy of the latter statement is questioned by appellant, the contention being that the testimony of Dr. Henschen shows that the examination and

990

X-rays, made the day before the witness was called to testify, was with the view of testifying in the case.

Appellant is correct. The last examination and X-rays by Dr. Henschen were made as a preparation for, and with view of his being called as a witness. We followed appellee's brief, stating, in effect, that the testimony showed that Dr. Henschen examined appellee, "not for the purpose of testifying in the case, but as one of a coterie of doctors treating the patient". (See p. 7, appellee's brief.) As applied to his connection with the case in its initial stages, the statement in appellee's brief is correct, but we find from the testimony of Dr. Henschen that the latter examination and X-rays were made as a preparation to enable him to give accurate and intelligent testimony in regard to appellee's present condition. We do not regard the error of any consequence, but the opinion will be corrected in the respect indicated.

We have carefully examined all grounds alleged for rehearing by appellant and, finding same without merit, the motion is overruled.