**TRAVIS LIFE INSURANCE COMPANY,**
Appellant,

v.

Herminia C. RODRIGUEZ, Appellee.

No. 10668.

Court of Civil Appeals of Texas.

Austin.

June 17, 1959.

Rehearing Denied July 15, 1959.

O'Quinn, McDaniel & Randle, Howell Finch, Robert Mueller, Austin, for appellant.

M. N. Garcia, Austin, for appellee.

HUGHES, Justice.

Herminia C. Rodriguez, the widow of Romauldo S. Rodriguez, sued the Travis Life Insurance Company to recover on two burial policies in each of which she was named beneficiary, one issued by such company and one by Weed-Corley Burial Association which subsequently merged with Travis Life which assumed any liability under such policy. These policies were payable, subject to the conditions therein stated, on the death of Romauldo S. Rodriguez which event occurred October 7, 1956.

Both policies sued on were issued and delivered January 25, 1956, and each contained this provision:

"this policy shall not be in force until it is delivered to the applicant while alive and in good health."

This provision of these policies was invoked by the company as a defense to this suit.

Trial to a jury resulted in a verdict that deceased was in good health when the policies were delivered. Judgment based on this verdict was rendered for appellee.

Appellant has several points the substance of which is that there is no evidence or insufficient evidence to support the verdict of the jury.

Appellee testified that deceased suffered from tuberculosis from about 1943 to 1952 when he recovered. That thereafter he worked, looked well and did not complain about his health until shortly before his death. Appellee informed the insurance companies before the policies were delivered that her husband had had tuberculosis and this disease was expressly waived in the policies.

After 1952 and until he died deceased made frequent visits to the doctor and to Brackenridge Hospital for, as appellee testified, "checkups."

Appellee did not know her husband had suffered from any disease except tuberculosis and she believed he had recovered therefrom. There is no evidence that she knowingly withheld any fact or misrepresented any fact to the insurance companies. On the contrary her good faith is exemplified by her rejection of the policies when she learned that they inquired about previous tuberculosis. Until this was waived she refused to accept the policies.

The evidence upon which appellant seeks to overturn the jury verdict consists of hospital records and the testimony of the medical records librarian of Brackenridge Hospital. She testified, in part:

"Q. Please state your name. A. Carolyn Cook.

"Q. And what is your address? A. 3715 Windsor Road, Austin, Texas.

\*   \*   \*   \*   \*

"Q. You are the medical records librarian at Brackenridge Hospital; is that right? A. Yes.

"Q. And as such records librarian, you regularly receive and keep records of the hospital of patients for treatment at the hospital that are normally made in the normal course of business there at the hospital? A. Yes.

"Q. These doctors and nurses or other employees at the hospital who treat patients normally make memorandum at the time of such treatment and then transmit this information directly over to your library where it is maintained or kept? A. Yes.

"Q. And this information is made at the time of treatment or very soon thereafter; isn't that correct? A. Yes.

"Q. And these memoranda that were transmitted to you were the original entries on the part of the doctor or the nurse; is that correct? A. Yes; yes."

Miss Cook identified the records pertaining to deceased and from them she read into the record the following information:

Deceased was first admitted to Brackenridge Hospital July 7, 1955; the next day he had a "serology taken"; on the 25th day of July a "lab test", also July 28th, August 1 and August 8, 1955. The record does not show that deceased was retained in the hospital over night during this period.

In July, 1955 the "admitting diagnosis was leukemia."

Deceased was next admitted to Brackenridge Hospital in August, 1956 and remained there for twenty one days. His diagno-

sis on admission was "leukemia" and "the final diagnosis was myelogenic leukemia, chronic."

Deceased as also in Brackenridge Hospital from September 19, 1956, until September 22, 1956, and was diagnosed chronic myelogenic leukemia and secondary anemia."

Appellee introduced from the hospital records for 1955 and 1956 entries such as "patient feeling fine," "no complaints," "gained weight," etc. As to these entries Miss Cook testified:

"Q. Would you please testify as to what the record shows with reference to whether treatment was given to the patient—just generally; I don't want any specific time, but on each time of his visits was he not given drugs for the disease that he was suffering from at the time? He was being— A. Yes.

"Q. —treated, in other words, and the treatment was continued; is that right? A. Yes, throughout 1955.

"Q. Now, you did not find any record, I believe, after October of 1954 for treatment of tuberculosis of this patient, Romualdo Rodriguez; is that correct? A. That is correct.

"Q. All other times after that date, so far as the record is concerned, he was being treated for chronic leukemia? A. Yes, sir, except on the occasions that he came to the eye clinic.

"Q. The eye clinic? A. And the dental clinic."

Appellee objected to the admission of all the testimony of Miss Cook obtained from the hospital records and particularly to the diagnostic recitations on the ground of hearsay. These objections were overruled and the evidence admitted. If this was error then the judgment must be affirmed because inadmissible hearsay evidence has no probative force. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533.

We know as a matter of common knowledge that a person suffering from leukemia is not in good health.

We also know that "there are certain scientific fields wherein the average juror or layman does not possess the knowledge or information from which to draw his own conclusions" and in these fields he "must be guided by the opinions of experts who have acquired scientific information on the subject. * * * The cause, diagnosis and treatment of diseases usually come within this category." Scott v. Liberty Mutual Ins. Co., 204 S.W.2d 16, 18, Austin Civil Appeals, writ ref., N.R.E.

The record does not reflect that appellee had any special qualifications which give weight to her testimony that deceased was in good health when the policies were delivered sufficient to make an issue on this subject if the hospital records and their recitations are admissible to show that deceased was suffering from leukemia when the policies were delivered.

Unquestionably the hospital records containing the diagnosis of deceased are hearsay and unless a valid exception to the hearsay rule has been created by the Legislature the records should not have been admitted and if erroneously admitted could not form the basis of a judgment.

In Brown v. Shannon West Texas Memorial Hospital, Tex.Civ.App.1949, 222 S.W. 2d 248, writ ref., N.R.E., we held that hospital records containing statements as to treatments administered a patient for a particular disorder were admissible under Art. 4477, Rule 50a, Vernon's Ann.Civ.St., but held the Trial Court's error in excluding them was harmless.

Since this decision the Legislature has enacted Art. 3737e, V.A.C.S. (1951), the pertinent provisions of which are:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or

event or the existence of the condition if the judge finds that:

"(a) It was made in the regular course of business;

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

"Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility.

\*     \*     \*     \*     \*

"Sec. 4. 'Business' as used in this Act includes any and every kind of regular organized activity whether conducted for profit or not."

This statute has been before the courts on numerous occasions. We will not review the cases where merely routine bookkeeping entries and ordinary commercial transactions are involved. The application of the statute in such instances does not appear controversial. We will, however, review the cases involving entries pertaining to subjects which ordinarily may only be established by expert testimony.

American General Ins. Co. v. Dennis, 280 S.W.2d 620, Fort Worth Court of Civil Appeals, holds records of private hospitals ad-

missible under Art. 3737e, however in that case the doctor who furnished the information contained in the record testified, as a witness, to its authenticity.

In Morris v. Ratliff, 291 S.W.2d 418, 423, writ ref., N.R.E., the Dallas Court of Civil Appeals held that under this article it was permissible for a doctor to refer to and read from hospital records showing "complaining causes and progress reports \* \* including all initial work and laboratory reports." These reports were made in the hospital and in the department where the doctor was employed and the doctor "remembered" the patient. It is not shown that the doctor treated this patient or that he had ever had personal knowledge of the contents of the record.

In Thompson v. Robbins, Tex.Civ.App., 297 S.W.2d 247, 253, affirmed Tex., 304 S.W.2d 111, the Texarkana Court held "the entire hospital records relating to appellee's hospitalization for his alleged injuries" were admissible under Art. 3737e saying: "The hospital records were fully proved. A proper predicate had been laid for the admission and it was shown that the records were kept in the ordinary course of the business of the hospital."

In Pan American Insurance Company v. Couch, 305 S.W.2d 819, writ ref., N.R.E., the Texarkana Court of Civil Appeals held inadmissible a doctor's report made under these circumstances. On April 27, 1956, Couch while an employee of Red Star Fertilizer Company claimed to have sustained certain injuries. Prior to this time Couch had sought employment from Rockwell Valves, Inc. but subsequent to his claimed injury he was on June 5, 1956 examined by a doctor on behalf of such company. A report of this examination was excluded by the Trial Court and this ruling was sustained on appeal. The court held the report inadmissible under Art. 3737e.

In Martinez v. Williams, 312 S.W.2d 742, 749, the Houston Court of Civil Appeals, recognizing that the authorities are at variance as to the admissibility of hospital rec-

ords consisting of diagnostic findings by the attending physician held in construing Art. 3737e that where the record contains the statement of a physician which "consists of an opinion or a conclusion of a diagnosis based upon his medical examination or findings of conditions not obvious or patently observable to persons generally, the same should be excluded."[1]

See also Hartman v. Harder, 322 S.W.2d 555, by the Amarillo Court of Civil Appeals holding that where there was no evidence to show that a blood analysis was made by a competent person an official report containing such analysis was not admissible under Art. 3731a, V.A.C.S.

We have carefully examined the application for writ of error and reply in Pan American Insurance Company v. Couch, supra. The application by a single point clearly presents the question of the admissibility of the doctor's report. The reply filed by respondent emphasizes that the doctor who examined the claimant was not an employee or representative of the company in which employment was sought and states that this is requisite under Art. 3737e to make the record admissible.[2] The reply also contended that "petitioner did not even prove that the purported writer of the instrument was a doctor."[3] The reply also contains the statement that "Article 3737e does not make a doctor's report admissible,

unless it be part of a hospital record of treatment."

The cases cited by the court in Pan American are Estes v. State, 162 Tex.Cr.R. 122, 283 S.W.2d 52; Smith v. Riviere, 248 S.W.2d 526, Texarkana Court of Civil Appeals; Page v. Scaramozi, 288 S.W.2d 909, San Antonio Court of Civil Appeals, writ ref., N.R.E., and Roberts v. Dallas Ry. & Terminal Co., 276 S.W.2d 575, El Paso Court of Civil Appeals, writ ref., N.R.E.

We will not discuss Estes further than to note that it seems not to have been followed in Trujillo v. State, Tex.Cr.App., 313 S.W.2d 871, nor in McCarty v. State, Tex.Cr.App., 319 S.W.2d 338, because Art. 1, Sec. 10, of the Texas Constitution, Vernon's Ann.St., there involved is applicable to criminal cases only.

As to Smith v. Riviere we need only say that neither Art. 3737e nor Art. 3731a, V.A.C.S., were in effect when the trial of that case was held.

Nor need we discuss at length Roberts v. Dallas Railway because the nature of the evidence erroneously admitted there is not comparable to the evidence with which we are concerned and because Art. 3737e was not invoked and was not mentioned by the court.

Art. 3737e was not relied on in Scaramozi although Art. 3731a apparently was.

1. The authority of a court to make this distinction in interpreting and construing Art. 3737e is not apparent to us. The distinction itself is criticized in Sec. 1262, McCormick and Ray, Texas Law of Evidence, 2nd ed., as follows:

"However, certain statements (such as psychiatric diagnosis) have encountered resistance in the federal courts and others because they rest on the maker's inference from data unusually difficult of interpretation, or upon 'subjective symptoms' rather than on direct observation. Thus the entry 'mental deficiency (organic brain disease)' has been rejected as the doctor's conclusion, an expert opinion based in part on hearsay. On the whole, however, it is believed that, even as to these controversial diagnoses, the

majority view favoring admission is the more expedient one. It works for simplicity by making it unnecessary to draw a difficult line, itself provocative of doubt and dispute; it serves the modern policy of the free use of organizational records; and is not too burdensome on the adversary who may himself call the declarant and thus bring out, if he can, any weakness of the diagnosis."

2. This is clearly untenable because while art. 3737e requires the entrant etc. to be an employee or representative of the business it is not required, under Sec. 2, that the entrant etc. have personal knowledge of the contents of the record.

3. This is the rationale of Hartman v. Harder, infra.

Neither article is mentioned in the opinion. There an official record of the Highway Department was excluded on the ground that it was hearsay and contained conclusions and opinions. The court did not discuss the question but merely cited Roberts and Riviere, supra, and Union Central Life Ins. Co. v. Boulware, 238 S.W.2d 722, Beaumont Court of Civil Appeals, to sustain its ruling. This latter case merely holds that a coroner's report is not admissible to show the cause of death it not being shown that the coroner was a physician and qualified to express an opinion on the cause of death. No statute was cited by the court. See footnote 3, infra.

We are very reluctant to accept the N. R. E. ruling in Pan American as authoritative and binding, this for the reason that the cases upon which that decision is based are not cases which categorically and upon principle deny the application of Art. 3737e under facts and circumstances present in this case.

We cannot, of course, know upon what ground the Supreme Court ruled N. R. E. in Pan American. From our study of the case we are convinced that Art. 3737e was inapplicable under the facts of that case because the report of the doctor was not shown to have been made in "the regular course of business" of Rockwell Valves, Inc., as required by Art. 3737e, Sec. 1(a). We do not know what business this company was in but we believe we can safely assume that it was not engaged in the care and treatment of the sick.

We cannot believe the N. R. E. in that case was intended to approve the holding that the fact that the doctor's report was hearsay made it inadmissible under Art. 3737e. If this is correct then such article and similar articles have little, if any, value.

The "hearsay" rule has many exceptions, most of which are court made. We know of no limitation upon the Legislature preventing it from creating an exception to the hearsay rule in civil cases.[4] We believe that this is exactly what the Legislature did when it enacted Art. 3737e. We believe it is a valid statute and one which the courts should enforce.

We refer to New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297, 303, by the United States Court of Appeals for the District of Columbia for an extensive and penetrating discussion of the Federal Shop Book Statute.[5] We quote briefly from the majority opinion:

"Hospital records are no different from any other kind of records kept in the regular course of business. They must be subjected to the same tests as to subject matter. Regularly recorded facts as to the patient's condition or treatment on which the observations of competent physicians would not differ are of the same character as records of sales or payrolls. Thus, a routine examination of a patient on admission to a hospital stating that he had no external injuries is admissible. An observation that there was a deviation of the nasal septum is admissible. Likewise an observation that the patient was well under the influence of alcohol. But the records before us here are not of that character. The diagnosis of a psychoneurotic state involves conjecture and opinion. It must, therefore, be subjected to the safeguard of cross-examination of the physician who makes it. And accounts of selected items from interviews with patients must be subject to the same safeguard."

as they treat of and relax the present rules pertaining to hearsay evidence.

4. See McCormick and Ray, Texas Law of Evidence, 2nd Ed., Sec. 1384 where it is suggested that the bar of Texas sponsor legislative enactment of the "Uniform Rules of Evidence" promulgated by the American Law Institute insofar, at least,

5. See also Sec. 1262, Hospital Records, McCormick and Ray, Texas Law of Evidence, 2nd Ed.

From the dissenting opinion of Associate Justice Edgerton we quote the following:

"The routine records of hospitals are within the literal meaning of the Rule. That they are within the intent of Congress is shown by the fact that two of the cases cited in the committee reports involve such records. They are also within the principle and purpose of the Rule as explained by the Supreme Court in the Palmer case. The business of hospitals is caring for patients. By its 'inherent nature' this business 'entails the keeping of numerous books and records essential to its conduct or useful in its efficient operation.' 'The methods systematically employed' for its conduct include the making and keeping of records of histories, diagnosis and treatment. These are 'routine reflections of the day to day operations' of the hospital's business. And, as Wigmore points out, some of the reasons for the admission of records in evidence apply with special force to the records of hospitals. 'The calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a Circumstantial Guarantee of Trustworthiness * * *; for the records are made and relied upon in affairs of life and death.' It may be added that the members of a hospital staff are persons of more than average responsibility; and that they have two strong motives, one humanitarian and the other professional, for correctness and usually no motive for fabrication. Dean Wigmore continues: 'Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions, occurring in the routine work of a large staff, are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand."

We think it quite likely that the majority in the Federal case would have admitted the record involved here on the premise that a diagnosis of leukemia is not one about which physicians ordinarily differ.

We believe the question presented is one of great practical importance to the Bar of Texas. We do not believe that it has been authoritatively settled. We believe it should be.

█ It is our opinion that Art. 3737e should be interpreted and construed so as to authorize the admission in evidence of the hospital records, including the diagnosis of leukemia shown thereon, proved and admitted in evidence in this case. So believing it is our further opinion that they preclude recovery by appellee.

Since we are not certain that the case has been fully developed on the issue of good health of deceased at the time the policies were delivered we refrain from rendering judgment but instead reverse and remand this cause.

Reversed and remanded.