GREAT AMERICAN RESERVE INSUR-
ANCE COMPANY, Appellant,

v.

Kathleen E. BRITTON, Appellee.

No. 7622.

Court of Civil Appeals of Texas.

Texarkana.

March 23, 1965.

Rehearing Denied April 13, 1965.

Roger A. Hansen, Brundidge, Fountain, Elliott & Churchill, Dallas, for appellant.

Howard S. Smith, Sulphur Springs, Woodrow Edwards, Mt. Vernon, for appellee.

DAVIS, Justice.

Plaintiff-appellant, Great American Reserve Insurance Company, sued defendant-appellee, Kathleen E. Britton, a widow, the beneficiary in a decreasing term life insurance policy on the life of her husband, Paul E. Britton, seeking to have the policy declared void because of the good health provisions in the policy on the ground that the insured had fraudulently given false answers to the questions in the application for the insurance policy. Appellee answered and filed a counterclaim upon the policy, sought recovery thereunder, and also sought the statutory penalty and attorneys' fees.

Trial was to a jury which answered all the special issues in favor of the appellee on her counterclaim. Judgment was entered for the discounted principal amount of the policy, penalty and attorneys' fees. Appellant has perfected its appeal and brings forward 9 points of error.

*History*

On September 5, 1961, about 7:00 P. M., Richard Carpenter, an agent of appellant, went to the home of Paul D. Britton and wife, Kathleen Britton, for the purpose of selling to Paul D. Britton a decreasing term life insurance policy. According to the evidence, and the jury findings, they were all seated at the dining table in the dining room of their home. After a brief discussion, agent Carpenter produced an application for insurance and asked the insured, Paul D. Britton, the questions that were listed on the application. In reply to the first question, Britton told Carpenter that he had had some gas pains in his upper abdomen, in his chest, and pains in his arms. When Carpenter asked Britton about his high or low blood pressure or disease of heart or circulatory system, the insured told Carpenter that he had been having some gas pains in his chest and pains in his arms, and that he had been to see Dr. Lester Hodges in Sulphur Springs,

and Dr. John S. Bagwell in Dallas, Texas. Carpenter wrote the name and address of Dr. Hodges on the application. Carpenter also listed the date of birth, the height and weight of Britton, along with his occupation as butcher in Brookshire Food Store in Sulphur Springs, Texas. Carpenter also listed the name of the appellee as the wife of Britton, her age as being 39, and showed her to be in good health; although appellee had had an operation on her leg about two years prior thereto and was still unable to return to work as a nurse.

In answer to the special issues submitted, the jury found that the insured was in good health on the date of the application and on the date of the delivery of the policy. The jury also found that the insured did not answer "Yes" to the question, "So far as you know and believe are you in good health and free from impairment?" The evidence shows that Carpenter disregarded the answer that Britton gave, and wrote the answer "Yes", without the knowledge or consent of Britton. The jury also found that Britton did not answer "No" to the question in the application, "So far as you know and believe do you now have or have you had high or low blood pressure of the heart or circulatory system?" The jury further found that Britton did not answer "No" to the question, "Have you ever consulted or been treated by any physician or practitioner in the last five years? Give names, address and details in the application." As above stated, Britton told Carpenter about the gas pains in his chest and pains in his arms; and gave the names of the two doctors.

After the application was filled out by Carpenter, he made a checkmark on a line at the bottom of the application and handed it to Britton for his signature. Britton signed the application without reading any part of it. After Britton had signed the application, he asked Carpenter: "What doctor do you want me examined by?"

Carpenter told the insured that for a policy of that size the Company did not require an examination by a doctor.

Appellant offered in evidence the written deposition of Dr. Bagwell, of Dallas, Texas. It showed that Dr. Bagwell made an examination of Britton on May 1, 1959. The deposition showed the examination consisted of a complete physical examination with special emphasis to the heart, lungs and abdominal region. A physical examination did not show any definite abnormality. Blood pressure was normal and x-rays of the heart and lungs were considered to be normal. The features in the electrocardiogram were considered to be probably abnormal. Dr. Bagwell did not see Britton but the one time. Dr. Bagwell gave him two prescriptions: one, for nitroglycerin pills, to be dissolved under the tongue for pains in the chest; and, one for penite pills, to be taken one after each meal and one at bedtime. There is no evidence in the record that Britton ever took any of the pills as prescribed by Dr. Bagwell. According to other evidence in the case, Dr. Bagwell advised Britton and his wife, appellee, that the cardiogram only showed a slight irregularity, and that if Britton had any kind of heart trouble it was angina, which was the best kind of heart trouble to have, because it would result in pain at times, which was a warning for him to stop whatever he was doing at the time.

The appellant then offered Dr. Lester Hodges as a witness, and when asked if he knew Britton had heart trouble or a heart condition, he testified as follows:

"Q. * * * As a matter of fact, was there ever an occasion when you saw him professionally, I'm speaking about, that you were of the opinion he had any heart trouble or heart condition?

"A. When I saw Mr. Britton he was always asystematic.

"Q. Meaning what?

"A. Meaning that he was not having any difficulty at all when I saw him; * * * but he was not having any difficulty at any time that I saw him.

"Q. All right, sir. Now, then, in answer to my question, was ever a time at any time you saw him when you felt he had heart trouble?

"A. No, * * *."

Dr. Hodges testified that he did not send Britton to see Dr. Bagwell. He further testified that, in his opinion, he was in good health on September 5, 1961, the date of the application, and on September 13, 1961, the date of the delivery of the policy.

The appellee testified that she and Britton were married in 1954. That he was working as a butcher. The work involved lifting heavy quarters of beef that would weigh as much as 150 lbs. (David Daniel, store manager, and Gambrell Lloyd, market manager, Brookshire Food Store in Sulphur Springs, gave direct testimony of these facts. T. D. Parkins and John Sheffield also testified that Britton was the butcher at Brookshires, and that he was a diligent worker and never complained). Appellee testified that before the insurance policy was written on her husband she had had an operation and was still not able to return to work. She testified concerning the facts about taking the application for the insurance policy, that she was present at all times and heard everything that was said between Britton and Carpenter. She further testified that her husband had previously been complaining with gas pains in his chest and pains in his arms, that she took him to see Dr. Bagwell because she knew him while she was working as a nurse and had, on occasions, nursed some of his patients. She testified that Dr. Hodges did not send her husband to see Dr. Bagwell. She testified that Dr. Bagwell told them, in effect, that her husband was all right ex-

cept the cardiogram showed a slight abnormality; that "if" he had heart trouble it would be the best kind, because it would give the warning for him to know when to slow down. Dr. Bagwell did not tell them that he had a heart condition, and did not advise Britton to return at a future date. Dr. Bagwell gave them two prescriptions. They took them and came back to Sulphur Springs, and Britton went right back to work as a butcher in Brookshire Food Store. Dr. Bagwell did not advise them that Britton should be at all restricted in his working activities.

Britton did not lose any time from his work after September 5, 1961, until May 15, 1962. On that date Dr. Hodges sent him to see Dr. C. D. McMillan in Paris, Texas, because he was having difficulty with his stomach; a burning symptom that indicated an ulcer. Britton was entered in St. Joseph Hospital, Parish, Texas, on May 15, where he remained until May 18, 1962.

According to the deposition of Sister Mary of Jesus offered by appellant, the case history of Dr. McMillan revealed that his physical examination failed to show any significant abnormality. He appeared healthy, but quite worried and distressed. Routine blood count and urinalysis were normal at the time of his admission, but a sedimentation rate was 18 millimeters per hour. An electrocardiogram was made that revealed changes consistent with left ventricular hypertrophy. A Masters two-step was done that showed positive changes indicative of coronary sclerosis. X-rays of the upper gastrointestinal tract revealed gastritis and duodenitis with a duodenal ulcer of recent origin. At the time Britton was released from the hospital he was advised as to the findings, except for de-emphasis of his coronary condition. He was given a prescription for Donnatal to be taken ac and hs, and Delusil to be taken every two hours between meals while awake. He was given a prescription for long acting Peritrate, to be taken twice daily. It seems that the coronary insuffi-

ciency being de-emphasized, that the Doctor and the Hospital actually kept this information away from Britton and his wife, the appellee.

There was no showing by Dr. McMillan, the hospital record, or the nurse as to the date of the onset of the coronary insufficiency. As soon as Britton was discharged from the hospital he returned to Sulphur Springs and assumed his job as a butcher in Brookshire Food Store.

There was other lay testimony as to the good health of the appellee as of September 5, 1961, by Lloyd, Parkins, Sheffield and Daniel. Lloyd, market manager of Brookshire Food Store, said he had been employed by the Brookshire Food Store for a little more than four years. He testified that he had been acquainted with Britton during his lifetime, that he worked as a butcher for the Brookshire Food Store, he was an excellent worker, never complained. Lloyd said that Britton was his assistant, had full charge of what they called the backroom, his actual duties consisting of labor in handling quarters of beef, cutting up meat, roast and steaks, and anything that there was to do in a meat market. That it was necessary for Britton to lift and carry heavy objects. That Britton was small of stature; that he came to work early and worked about twelve hours a day, from 5 to 5½ days per week; that Britton never did lose any time from his work except the three days he spent in the Paris Hospital, that he was always a diligent worker, and that he never heard him complain, and that, in his opinion, he was in good health on September 5, 1961. Daniel, the store manager for Brookshire, testified to the same facts, as well as did Parkins and Sheffield. The appellee testified that she, being a nurse, never had any suspicion whatever that her husband ever had any heart trouble, that it had never crossed her mind.

In view of the importance of this decision it seems necessary to give the full

history of the case and write a lengthy opinion.

Under the Texas Statutes an insurance company may issue an insurance policy without a medical examination. In this case Britton offered to be examined. In some states, where such policies can be so issued and the applicant for insurance offers to be examined, the insurance company waives a condition requiring good health. 1 Couch on Insurance, 2d Ed., p. 500, Sec. 1124; Polite v. National Accident & Life Ins. Co., 9 La.App. 83, 118 So. 846; Oglesby v. Life Ins. Co. of Virginia, 12 La.App. 311, 124 So. 551.

By its 1st, 2nd and 3rd points, appellant says the trial court erred in overruling its motion for instructed verdict on the ground that the uncontroverted probative evidence shows that the policy in question, by its terms, did not come into effect because Britton was not in good health at the time of the execution of the application and delivery of the policy; in overruling applicant's motion for new trial based on the complaint of the jury that Britton was in good health on the date of the application, and delivery of the policy was so against the great weight and preponderance of the testimony as to be manifestly unjust; and, in admitting lay testimony as to the good health of the insured over the objections that the witness was not qualified to express an opinion where there was a serious disease shown concerning which such witness would not be expected to have any knowledge or training. The facts in this case actually created an issue of fact as to the good health, or insurable health, of Britton at the time of the making of the application and the delivery of the policy.

Agent Carpenter testified that Britton looked to be in good health at the time he took the application and delivered the policy. According to all the evidence, Britton did not know that he had heart trouble at the time he made application and at no time prior to his death. The other lay witnesses testified as to Britton's physical appearance. They gave testimony that he looked to be healthy, did heavy work, and at no time did he complain. This testimony coupled with the testimony that was given by Dr. Hodges that Britton did not have heart trouble. The lay witnesses' testimony was admissible to show that Britton looked to be in good health at such time. As we view the record, the agent wrote the answers to the application wrong, and not in response to the answers that were given him by Britton when the agent asked the questions. The agent had the privilege at the time of taking the application to follow up the information given to him; or, he could have forced him to be examined. Under Art. 3.44, V.A.T.S. Insurance Code, formerly Art. 4732, there are many cases that hold that in cases like this there is an issue of fact created. Terry et ux. v. Texas Prudential Ins. Co., Tex.Civ.App., 77 S.W.2d 761, N.W.H; Universal Life & Accident Insurance Company v. Murphy, Tex.Civ.App., 368 S.W.2d 878, N.W.H. In the Murphy case the court said:

"In order to avoid a policy of insurance because of misrepresentation, the burden is on the insurer to plead and prove, not only that the answers made by the insured were false or untrue, but that the insured knew, or should have known, that they were untrue, and that he made them wilfully and with the intention of inducing the insurer to issue him a policy. Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820; American Central Life Ins. Co. v. Alexander, Tex. Com.App., 56 S.W.2d 864; Doyle v. Great Southern Life Ins. Co., Tex.Civ. App., 126 S.W.2d 735, affirmed 136 Tex. 377, 151 S.W.2d 197; General American Life Ins. Co. v. Martinez, Tex.Civ.App., 149 S.W.2d 637; American Nat. Ins. Co. v. Green, Tex.Civ. App., 96 S.W.2d 727; Provident Life & Accident Ins. Co. of Chattanooga v. Flowers, Tex.Civ.App., 91 S.W.2d 847; 46 C.J.S. Insurance § 1319, pp. 435–437; Krayer v. Prudential Ins. Co.

of America, Tex.Civ.App., 360 S.W.2d 844, reversed on other grounds, Tex., 366 S.W.2d 779; Golden State Mutual Life Ins. Co. v. Pruitt, Tex.Civ.App., 357 S.W.2d 812; Pioneer American Ins. Co. v. Meeker, Tex.Civ.App., 300 S.W.2d 212."

See, also, Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943; Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820; American Nat. Ins. Co. v. Ferguson, Tex.Civ.App., 209 S.W.2d 797, W.R., N.R.E.; Universal Life & Accident Ins. Co. v. Barron, Tex.Civ.App., 269 S.W.2d 467, W.R., N.R.E.; Texas Life Ins. Co. v. Hatch, Tex.Civ.App., 167 S.W.2d 802, W.R., W.O.M.; Legal Security Life Insurance Co. v. Harris, Tex.Civ.App., 359 S.W.2d 953, W.R., N.R.E.

▇▇ There is conflicting evidence between the doctors as to whether or not Britton was in good health at the time of the application and delivery of the policy. Certainly, lay witnesses could not give scientific testimony as to the heart condition, but their testimony is very conclusive that he appeared to be in good health at the time of the application and delivery of the policy. In view of all the testimony in the case, the lay testimony constitutes some evidence of probative force supporting the jury findings that the insured was in good health at the time of taking the application and delivery of the policy. We must look to the record as a whole to determine whether or not the evidence shows, considered as a matter of law, that the insured was not in good health at the time of the application and delivery of the policy. We are bound by the holding of the Supreme Court to look at the evidence favorable to the verdict and jury findings that the insured was in good health at the time of the application and delivery of the policy. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

▇▇ It seems that the 2nd point of error is not in keeping with Rules 320, 321 and 374, Texas Rules of Civil Procedure. Applicant did not give the trial court fair notice of its alleged error as being against the overwhelming preponderance of the evidence when the ground of error in the motion for new trial is directed only to the error of the trial court in overruling a certain paragraph in its motion for judgment N.O.V. Deal v. McLeroy, Tex.Civ.App., 346 S.W.2d 934, N.W.H.; Gulf, Colorado & Santa Fe Railway Co. v. Deen, 158 Tex. 466, 312 S.W.2d 933; De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95; Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887. The points are overruled.

By its points 4, 5, 6, and 7, appellant says that the trial court erred in overruling appellant's motion for judgment N.O.V. and motion for new trial in not setting aside the jury's answer to Special Issue No. 3 where the jury found that Britton did not answer "yes" to the application question, "So far as you know and believe, are you in good health and free from impairment", as being against the great weight and preponderance of the evidence as to be manifestly unjust; in overruling appellant's motion for judgment N.O.V. in not setting aside the jury's answer to Special Issue No. 3, where the appellee admitted in her pleadings that Britton had replied that he was in good health, and in overruling appellant's motion for judgment N.O.V. and motion for new trial in not setting aside the jury's answer to Special Issue No. 8, wherein the jury found that Britton did not answer "no" to the application question: "so far as you know and believe, do you now have, or have you had high or low blood pressure or disease of heart or circulatory system," insofar as such answer was so against the great weight and preponderance of the evidence as to be manifestly unjust; and in overruling appellant's motion for judgment N.O.V. and motion for new trial in not setting aside the jury's answer to Special Issue No. 13, where they found that Britton had not represented to appellant that he had never consulted or been treated by any physician or practitioner in the past five years, insofar as such finding is so against the great

weight and preponderance of the evidence as to be manifestly unjust.

■ From the history that has heretofore been given in the case, these points are without any merit. The insurer is charged with knowledge of the facts that create contracts that are made by its agents. 3 Couch on Insurance, 2d 710, Sec. 26:158; p. 712, Sec. 26:160, and the authorities cited therein. The points are overruled.

By its 8th point appellant says the trial court erred in awarding penalty and attorney's fees to appellee where there was no evidence of demand being made upon the appellant for payment of policy proceeds. Agent Carpenter testified that the appellee had executed a proof of loss, and that he sent the executed proof of loss to the company about three or four days after the insured's death. The death occurred on February 6, 1963. He further testified that the proof of loss was a request for payment of the insurance. Appellant offered in evidence portions of a deposition of the Assistant Vice President and Manager of the Claims Department, wherein he testified as follows:

"On April 4, 1963, Mrs. Britton was contacted personally in Sulphur Springs by one of our claim representatives to explain the company's action as to why this life policy could not have been issued to Mr. Britton if the full information about his medical history had been given on the application, but she refused to accept the refund of premium tendered to her at the time. On April 8, 1963, a letter was written to Mrs. Britton explaining this recision action and why the company could not be bound. A company check for refund of premium was enclosed with this letter. On April 10, 1963, our original letter and the company check for refund of premium were returned to us from Mrs. Britton. Her envelope was postmarked April 9, 1963."

■ Appellant on April 18, 1963, filed suit in the District Court seeking to void the policy. The appellee filed her counterclaim against the appellant on May 1, 1963, almost four months after the first claim and demand for payment of the insurance had been made. Actually there was no demand for payment "within 30 days from a specific date". The 30 days' time is governed by Art. 3.62 of the Insurance Code. The demand was actually made just a few days after the death of the insured. Payment was actually refused by the action of the company. There could be no more positive proof that they had refused to pay the same than filing the suit to void the policy under Art. 3.62 of the Insurance Code and the authorities cited thereunder. Everything that appellee was required to do had been done. The point is overruled.

■ By its 9th point, appellant says the trial court erred in granting the appellee an attorney's fee because there was no evidence of what a reasonable attorney's fee would be. Art. 3.62 of the Insurance Code reads as follows:

"In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy."

There was no evidence offered to show what a reasonable attorney's fee would be.

In the case of American National Insurance Co. v. Points, Tex.Civ.App., 131 S.W. 2d 983, error dism., judgment correct, was a suit for disability insurance and all controverted issues of fact were submitted to the jury. The trial court also submitted an issue as to the amount of a reasonable attorney fee. The court held that it was *not* necessary that such an issue be submitted, but that if the judge decided to submit such an issue the action would not be error. The court said:

> "*It is obvious, we think, that the court trying the case is authorized to fix the amount of the attorney's fee and, in doing so, may take judicial knowledge of the entire record, the nature of the suit, the amount in controversy, the fact that the case is prosecuted by an attorney or attorneys, to be viewed in the light of the court's knowledge and experience as a lawyer and judge, and, as the statute provides, shall take into consideration the benefits to the insured, incident to the prosecution of the suit, accrued and to accrue on account of the policy.* However, we do not think it would be improper for the court to have before it the opinion of experts, or even to submit the question to a jury; *but, in view of the quoted provision of the statute, we think it the exclusive province of the court to have the final say in fixing the amount of the attorney's fee in all cases controlled by the statute in question, and that its action in so doing is subject to review only for an abuse of discretion.*" (Emphasis added).

It seems to be the duty of the court to fix the amount of the attorneys' fees in such cases, and the only thing that can be complained of is whether or not the trial court abused its discretion in doing so. American Income Life Ins. Co. v. Davis, Tex.Civ. App., 334 S.W.2d 486, N.W.H.; Franklin Life Ins. Co. v. Woodyard, Tex.Civ.App., 206 S.W.2d 93, N.W.H.; National Life & Accident Ins. Co. v. Runnels, Tex.Civ.App.,

227 S.W.2d 351, N.W.H.; Johnson v. Universal Life & Accident Ins. Co., 127 Tex. 435, 94 S.W.2d 1145; Trevino v. American National Ins. Co., 140 Tex. 500, 168 S.W. 2d 656. The point is overruled.

The judgment of the trial court is affirmed.