**GREAT AMERICAN RESERVE INSUR-ANCE COMPANY, Petitioner,**

v.

**Kathleen E. BRITTON, Respondent.**

No. A–10815.

Supreme Court of Texas.

July 27, 1966.

Rehearing Denied Nov. 2, 1966.

Brundidge, Fountain, Elliott & Churchill, Roger A. Hansen, with above firm, Dallas, for petitioner.

Howard S. Smith, Sulphur Springs, Woodrow H. Edwards, Mount Vernon, for respondent.

CALVERT, Chief Justice.

Suit was by Great American Reserve Insurance Company to cancel a non-medical life insurance policy issued on the life of Paul D. Britton. Cancellation was sought on the ground that the insured was not in good health when the application for insurance was made or when the policy was delivered and because the insured had fraudulently given false answers to certain questions in the application. A cross-action was filed by Kathleen E. Britton, surviving widow of the insured and the beneficiary named in the policy. By her cross-action Mrs. Britton sought to recover the policy proceeds, a statutory penalty of 12% and reasonable attorney fees in the sum of $4,000.00. The case was tried to a jury and judgment was rendered on the jury's verdict awarding Mrs. Britton the relief she sought in full. The Court of Civil Appeals affirmed. 389 S.W.2d 320. We affirm in part and in part reverse and remand.

The issue in the courts below concerning answers given by the insured to questions in the application for insurance has gone out of the case at this stage of the appeal, and will not be considered. The issue concerning the good health of the insured is the same whether related to the time of making of application or to the time of delivery of the policy and will be dealt with only as it relates to the time of delivery of the policy.

The insurance policy contains a provision that "* * * the policy shall not take effect until it has been delivered to its owner during the lifetime and good health of the Insured * * *." Application for insurance was made by Britton on September 5, 1961, and the policy was executed and delivered on September 13, 1961. Britton died on February 6, 1963.

The pertinent special issue submitted in the trial judge's charge to the jury and the answer thereto read as follows:

"Do you find from a preponderance of the evidence that Paul D. Britton was not in good health on the date of delivery of the policy in question?

"Answer 'He was not in good health' or 'He was in good health,' as you may find.

ANSWER: He was in good health."

The issue properly placed the burden of proof on Great American, whether the case be considered from its standpoint in seeking to cancel the policy or from the stand-

point of Mrs. Britton in seeking a recovery of the policy proceeds. Trevino v. American National Ins. Co., 140 Tex. 500, 168 S.W.2d 656 (1943).

■ There is much discussion in the opinion of the Court of Civil Appeals and in the briefs of the parties as to whether the jury's answer to the issue has support in evidence of probative force. That is not the question. It would avail Great American nothing to set aside the jury's answer to the issue: it still would not have discharged its burden of obtaining a finding from a preponderance of the evidence that Britton *was not*[1] in good health, a finding essential to its right to cancel and to its defense to the cross-action if the issue is one of fact. See 38 T.L.R. 359, 363 (1960). There is also much discussion in the opinion of the Court of Civil Appeals and in the briefs as to the relative weight to be given to lay testimony of the apparent good health, of Britton and a medical diagnosis, made sometime prior to the date of delivery of the policy, that he was afflicted with a disease or bodily infirmity known as angina pectoris. That is not the ultimate issue in the case. Medical diagnoses and lay testimony may have an important bearing, or even controlling effect, on the issue of "good health" under the particular circumstances of a given case, but the true question to be decided in cases of this type in which the insurer fails to obtain a favorable jury finding is whether the evidence establishes conclusively, according to recognized legal standards, that the insured was not in good health. This question was properly raised by Great American's motion for instructed verdict at the conclusion of the evidence and was properly preserved by its first point of error in the Court of Civil Appeals. With the issue before us thus brought into proper focus, we proceed to its decision.

There is considerable lay testimony in the record indicating that the insured appeared to be in good health when the policy was delivered. The evidence is set out in detail in the opinion of the Court of Civil Appeals. We need not notice this testimony further as it does not control decision of the issue as we have stated it.

The evidence which Great American asserts establishes as a matter of law that Britton was not in good health consists of the deposition testimony of Dr. John S. Bagwell; a hospital record of a medical history and diagnosis made by Dr. C. D. McMillan; testimony of Dr. Lester Hodges, Britton's family physician; and Britton's death certificate.

Dr. Bagwell examined Britton on May 1, 1959, some two years and four months before the policy was delivered. Britton went to see Dr. Bagwell because he was having a tremendous amount of gas pressure and pains in his chest. In May, 1962, Dr. Hodges recommended that Britton see Dr. McMillan because "he was having difficulty with his stomach, and he was burning and [had] symptoms of an ulcer." Britton was hospitalized by Dr. McMillan from May 15 to May 18, 1962, three years after the examination by Dr. Bagwell and some eight months after the insurance policy was delivered.

Britton gave both doctors a history of chest pain which radiated into his arms. Dr. Bagwell was convinced by the history given him, a physical examination which was "considered *to not show any definite abnormality*," x-rays which were "considered *to be normal*," and an electrocardiogram showing features "considered to be *probably* abnormal" that Britton had "heart trouble" which he diagnosed as "angina pectoris, *probably* due to arteriosclerosis," and for which he prescribed nitroglycerin tablets for relief of pain. Dr. McMillan concluded from the history given him, a physical examination which "failed to disclose any *significant abnormality*," and tests which revealed "changes *consistent* with left ventricular hypertrophy" and

---

1. Emphasis ours throughout unless otherwise indicated.

"positive changes *indicative* of coronary sclerosis" that Britton had a duodenal ulcer of recent origin, chronic gastritis and "Coronary insufficiency."

Britton was found dead in his bed in the morning of February 6, 1963. The death certificate, signed by Dr. Hodges, gave the immediate cause of death as "myocardial infarction."

Great American does not contend that Britton had the duodenal ulcer, found by Dr. McMillan, when the policy was delivered, or that chronic gastritis would avoid the policy. We narrow our attention, therefore, to the evidence relating to Britton's heart condition.

■ An insurance policy requirement that an applicant for insurance be in "good health" does not mean "perfect health." If it did, all policies could be canceled within the contestable period. It is for this reason that the courts have evolved certain standards for measuring "good health." The term is usually defined as a state of health free from any disease or bodily infirmity of a *substantial* nature which affects the general soundness and healthfulness of the system *seriously* or *materially* increases the risk to be assumed by the insurer. See Sovereign Camp, W.O.W. v. Derrick, Tex.Civ.App., 64 S.W.2d 982, 983 (1933), writ refused; Vann v. National Life & Accident Ins. Co., Tex.Com.App., 24 S.W.2d 347, 349 (1930); Southern Surety Co. v. Benton, Tex.Com.App., 280 S.W. 551 (1926); Hines v. Kansas City Life Ins. Co., Tex.Civ.App., 260 S.W. 688, 690 (1924), writ dism.; National Life & Accident Co. v. Moses, Tex.Civ.App., 257 S.W. 289 (1923), no writ hist.; Couch on Insurance, sec. 885a. We have also held that a good health provision is breached if the applicant "is suffering from a *serious* kind of illness, *which continues and eventually causes his death.*" Texas Prudential Ins. Co. v. Dillard, 158 Tex. 15, 307 S.W.2d 242, 247 (1957). The conclusiveness of Great American's proof that Britton was not in good health must be tested by these standards.

■ Athough Dr. Bagwell's testimony is highly equivocal at best, for opinion purposes we may treat the testimony as establishing conclusively that Britton had "heart trouble," which Dr. Bagwell diagnosed as "angina pectoris" but which Dr. McMillan diagnosed as "coronary insufficiency." We are next met with this question: How *seriously* did the "heart trouble," "angina pectoris," or "coronary insufficiency" affect the general soundness and healthfulness of Britton's system generally, and how *materially* did they increase the risk of Great American? These are matters about which expert medical witnesses would be competent to testify, but the only competent evidence having any bearing on the question which we may consider is testimony of Dr. Hodges that angina "is a continuing type of disease." The result is that to hold the good health provision of the policy was breached as a matter of law we would have to take judicial notice that the nature of one or more of the ailments was such as to *seriously* affect the soundness of Britton's health or to *materially* increase Great American's risk. These are relative matters, and except in extreme cases should be left for jury determination from evidence introduced on trial.

■ "Heart trouble" is a broad term and no doubt encompasses more than one type of specific ailment. "Angina pectoris" is defined by Webster's Third New International Dictionary as "a disease characterized by paroxysmal attacks of substernal pain of short duration that is usu. associated with a sense of apprehension or fear of impending death, precipitated by effort or emotion, and relieved quickly by rest or administration of nitroglycerin." Although angina may be, as Dr. Hodges testified, a continuing disease, the evidence does not tell us whether during its continuance it has a progressively more serious effect on health or the rapidity of its progression. In American Casualty & Life Co. v. Guerin-

ger, Tex.Civ.App., 205 S.W.2d 423, 424 (1947), no writ hist., the court noted that the "details of the nature and progress, of the disease of cancer are not subjects of either common or judicial knowledge." Neither may we know the details of the nature and progress of angina pectoris from common or judicial knowledge. In this connection, it is to be noted that Dr. McMillan's final diagnosis, made three years after diagnosis by Dr. Bagwell and eight months after delivery of the policy, was "Coronary insufficiency." Webster's, supra, defines "coronary insufficiency" as "coronary insufficiency *of relatively mild degree."*

■ In *Dillard*, supra, the evidence was conclusive that the applicant had epilepsy in its most serious form when the policy was delivered, and that the affliction was the cause of death. On that proof we concluded that the insurer had established breach of a good health provision as a matter of law. *Dillard* does not rule this case. As pointed out, the evidence here does not conclusively establish a *serious* infirmity when the policy was delivered. Moreover, death from angina pectoris is not conclusively established. Webster's, supra, defines "myocardial infarction" as "infarction of the myocardium, typically resulting from coronary occlusion," and defines "coronary occlusion" as "the partial or complete blocking of a coronary artery (as by a thrombus or by spasm or sclerosis of the artery)." We may believe or strongly suspect that Britton's death from a myocardial infarction was caused by sclerosis of an artery rather than by a thrombus, but we do not know it and no evidence was offered to prove it. We hold that the evidence does not establish conclusively, according to legal standards, that Britton was not in good health when the policy was delivered. Great American's motion for instructed verdict was properly overruled.

The principal cases cited by Great American for a contrary conclusion are *Dillard,* supra; Lincoln Income Life Ins. Co. v. Mayberry, 162 Tex. 492, 347 S.W.2d 598 (1961), and Great National Life Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W.2d 602 (1940). We have dealt with *Dillard.* In *Mayberry* the insured child died within two days of delivery of the policy, and the medical evidence was that at the time of delivery thereof the physical condition of the child was such that it had only a fifty-fifty chance of survival. There is no such evidence in this case. In *Hulme* there were jury findings supporting the conclusion that the insured was not in good health. See opinion of Court of Civil Appeals, 116 S.W.2d 459, 460 (1938).

Avoiding insurance policies on judicial knowledge of the "substantial" character of certain diseases and their "serious" effect on health is a dangerous encroachment into an area of expert medical opinion. It is safer to require proof; and proof at the trial court level may well settle the issue.

Great American also complains of that portion of the trial court's judgment which awarded a recovery of $4,000.00 as attorney fees. It asserts that no demand for payment of the policy proceeds was made before the filing of suit therefor and that there is no proof of reasonableness of the sum sought and recovered as fees.

The right to recover attorney fees is given and limited by Article 3.62 of the Texas Insurance Code, V.A.T.S., which reads in pertinent part as follows:

"In all cases where a loss occurs and the life insurance company * * * shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. * * * The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy."

■ Making demand for payment of policy proceeds is ordinarily prerequisite to the recovery of attorney fees under the statute; and because of the penal nature of the assessment we have held that the requirement is not met by the filing of suit. Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470, 115 A.L.R. 1301 (1937); Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S.W. 406 (1910). However, when the insurer files suit to cancel the policy before suit for the policy proceeds is filed, we hold that the entire liability of the insurer, both on the policy and under the statute, is put in issue, and the right of the insurer to require demand as a prerequisite to liability for attorney fees is waived. The purpose of the demand provision is to give the insurer a reasonable opportunity to investigate the claim and pay the proceeds before suit is filed. When the insurer files suit to cancel the policy, the statutory purpose would not be served by requiring a demand before a counterclaim or cross-action is filed.

■ The plaintiff offered no proof of any kind of the reasonableness of the attorney fees sought and recovered. We have held that "[t]he reasonableness of attorney's fees in an insurance case is a question of fact to be determined and must be supported by competent evidence and may be submitted to a jury." Johnson v. Universal Life & Accident Ins. Co., 127 Tex. 435, 94 S.W.2d 1145, 1146 (1936). See also Trevino v. American National Ins. Co., 140 Tex. 500, 168 S.W.2d 656, 660 (1943). Mercury Life Ins. Co. v. Mata, Tex.Civ.App., 310 S.W.2d 130 (1958), writ ref., does not hold to the contrary. The judgment must be reversed in so far as it awards recovery of $4,000.00 as attorney fees.

There are holdings in some Court of Civil Appeals' opinions that the reasonableness of attorney fees is not a jury question but is a matter entrusted to the trial judge's discretion; and further, that the trial judge may adjudicate reasonableness on judicial knowledge and without the benefit of evidence. See Franklin Life Ins. Co. v.

Woodyard, Tex.Civ.App., 206 S.W.2d 93 (1947), no writ hist.; American Income Life Ins. Co. v. Davis, Tex.Civ.App., 334 S.W.2d 486 (1960), no writ hist.; American Nat. Ins. Co. v. Points, Tex.Civ.App., 131 S.W.2d 983 (1939), writ dism., judgment correct. Those holdings are in conflict with our own in Johnson and Trevino, supra, and are disapproved. Some of the cited cases were decided after our decisions in Johnson and Trevino, and no doubt were in part responsible for the failure of plaintiff to make proof of reasonableness.

■ Liability of Great American for the policy proceeds, the statutory penalty and costs, other than the attorney fees, is correctly fixed in the present judgment. The claim for attorney fees is a severable claim, and under Rule 503, Texas Rules of Civil Procedure, we are authorized to sever the claim and reverse the judgment as to it only, which we do. Plaintiff is clearly entitled to recover attorney fees in some amount. Accordingly, we exercise the authority conferred by Rule 505, Texas Rules of Civil Procedure, and remand the severed cause to the trial court for a new trial. The remainder of the judgment is affirmed.

GRIFFIN, NORVELL and HAMILTON, JJ., dissenting.

## DISSENTING OPINION

NORVELL, Justice.

As a general rule, the cause, diagnosis, progress and treatment of disease are matters in which we must rely upon the opinions of medical experts. However, this rule is not universal in its application. I think it can be said as a matter of common knowledge that one suffering with some well-known acute disease such as smallpox, diphtheria or typhoid fever is not in good health. In Travis Life Insurance Company v. Rodriguez, 326 S.W.2d 256 (Tex.Civ. App.1959, writ ref'd. n. r. e., 160 Tex. 182, 328 S.W.2d 434), it was held as a matter

of common knowledge that a person suffering from leukemia is not in good health. As to epilepsy of the most serious type, see, Texas Prudential Insurance Co. v. Dillard, 158 Tex. 15, 307 S.W.2d 242 (1957). Other examples of both acute and chronic diseases coming within the range of common knowledge might be given. Cf. Lincoln Income Life Ins. Co. v. Mayberry, 162 Tex. 492, 347 S.W.2d 598 (1961).

In my opinion, the evidence in this case shows conclusively that at the time of the delivery of the policy sued upon, Paul D. Britton was suffering with angina pectoris due to arteriosclerosis and that his chest pains at times were so severe that it was necessary for him to take nitroglycerin tablets in order to dilate the coronary arteries so that the blood could flow more easily and thus supply oxygen to the heart muscle. Admittedly, the term "good health" as used in life policies such as that issued to Mr. Britton is a relative one, but in my opinion, it is a matter of common knowledge that any person suffering from angina to the extent that it is necessary to take a powerful drug in order to dilate the blood vessels cannot be said to be in "good health". The Oxford Universal Dictionary defines the term "angina" or "angina pectoris" as, "A dangerous disease, marked by sudden and severe pain in the lower part of the chest, with a feeling of suffocation; called also, breast-pang, heart-stroke, and spasm of the chest."

A perusal of the discussion of judicial notice contained in McCormick and Ray, Texas Law of Evidence (2d Ed.) §§ 151 to 211, inclusive, demonstrates that the field is an expanding one and I think the judicial notice device may be safely exercised in the present case. See McCormick and Ray, supra, § 197. I would reverse the judgments of the lower Courts and render judgment for the petitioner. Accordingly, I respectfully dissent.

GRIFFIN and HAMILTON, JJ., join in this dissent.