**NATIONAL LIFE & ACCIDENT INSURANCE COMPANY, Appellant,**

v.

**Mrs. Barbara NOTTER, Individually and on behalf of the Estate of John L. Loska, Appellee.**

**No. 4978.**

Court of Civil Appeals of Texas, Waco.

April 8, 1971.

Rehearing Denied May 6, 1971.

Matthews & Thorp, Robert E. Davis, Dallas, for appellant.

Kenneth W. Fuqua, Dallas, for appellee.

OPINION

McDONALD, Chief Justice.

This is an appeal by defendant Insurance Company from a judgment for plaintiff beneficiary, in a suit on a life insurance policy.

The jury found the insured was in good health when the policy was delivered. If the insured was not in good health on the date policy was delivered, recovery on the policy would be avoided under its terms.

Defendant appeals asserting "the evidence conclusively establishes that the insured was not in good health when the policy was delivered". The point is actually one of "no evidence", since defendant did not file motion for rehearing.

On November 19 (or December 14, 1968) John Loska applied for life insurance with defendant. On December 27, 1968 defendant Insurance Company issued Loska its policy or $2000., with plaintiff herein as beneficiary. Such policy was delivered to Loska within the following few days. Loska died June 12, 1969 of malignant lymphoma.

Plaintiff beneficiary filed claim and proof of loss with defendant to collect the proceeds of the policy. Defendant tendered her its check for $103.73 for premiums paid in full discharge of its liability under the policy. Plaintiff refused the check and filed this suit.

Loska was 56 years old when he applied for the insurance. Defendant required Loska to take a physical examination from Dr. John P. Koren, a doctor of the company's choosing. Dr. Koren examined Los-ka on December 14, 1968, and by written report found his blood pressure to be 150 over 84; that there were no "obvious abnormalities of his heart, blood vessels, respiratory organs, abdomen, pelvis, nervous system, eyes, ears or extremities" and that Loska's "health appears good both mental and physical. Heart rate and rhythm regular—no murmurs. No gross enlargement noted".

The examination and report were made and required by defendant to determine the health of Loska for the purpose of issuing him a life insurance policy. Mr. Loska went to Mississippi to visit his daughter on December 15, 1968 and became sick with a bad leg, and was hospitalized until December 24, 1968. Upon his discharge he was diagnosed to have had: Thrombosis of deep veins of left leg; diabetes mild, gout; with secondary diagnosis of hypertensive cardiovascular disease, left bundle branch block, asthma, pulmonary emphysema moderate severity, and azotemia. Dr. Janet who treated Mr. Loska during the period December 15–24, 1968 testified by deposition that his condition was grave when he first saw him; that he diagnosed the above conditions, that he last saw him on December 30, 1968, and that he was "very much improved", both from the time of his discharge from the hospital on December 24, and from the time of admission on December 15th.

Plaintiff, daughter of Loska, testified he seemed very healthy and happy and was having no trouble with his leg on his last visit to Dr. Janet on December 30, 1968.

On April 9, 1969 Loska entered the hospital, and with the exception of May 15 to May 20, remained there until his death on June 12, 1969. The admitting diagnosis was chest pain, mild diabetes, and emphysema. The final diagnosis after his death was myocardia infarction, malignant lymphoma, hystiocytic diffuse, arteriosclerotic heart disease, chronic renal insufficiency, chronic obstruction pulmonary disease, and anemia iron deficiency.

Dr. Jones who never saw insured in life testified from the medical records that Lymphoma (which was the cause of Mr. Loska's death) was a cancerous type of condition that affects the lymph nodes, glands, ducts and spleen, bone marrow and other organs of the body "as any type of cancer is apt to do"; that based on reasonable medical probability he had lymphoma on December 27, 1968; that such condition was incurable by known medical means.

Dr. Jones on cross examination testified that he could not state whether Loska had more arteriosclerosis than any other normal 56 year old man; what degree of asthma he had; how serious his emphysema was; whether his hypertensive cardiovascular disease was much beyond mere high blood pressure; whether his left bundle branch block had cured, for it is sometimes cured by nature; whether the thrombophlebitis had cured, for it could be cured within two weeks of onset; or whether the lymphoma, the cause of Loska's death, spread through his body two months or ten years prior to his death.

In Great American Reserve Ins. Co. v. Britton, 406 S.W.2d 901, our Supreme Court treated in depth the problem here involved. Such case holds:

"An Insurance policy requirement that an applicant for insurance must be in 'good health' does not mean 'perfect health.' If it did, all policies could be cancelled in the contestable period. It is for this reason that the courts have evolved certain standards for measuring 'good health.' The term is usually defined as a state of health free from any disease or bodily infirmity of a *substantial* nature which affects the general soundness and healthfulness of the system *seriously* or *materially* increases the risk to be assumed by the insurer * * * We have also held that a good health provision is breached if the applicant is suffering from a *serious* kind of illness, *which*

*continues and* eventually causes his death * * * ".

Such case further holds in situations where the jury has found, as here, that the insured was in good health when the policy was delivered, the burden is on the insurance company to obtain a finding from a preponderance of the evidence that the insured was not in good health, and not merely set aside the jury finding that the insured was in good health. And the court says:

"Medical diagnosis and lay testimony may have an important bearing, or even controlling effect, on the issue of 'good health' under the particular circumstances of a given case, but the true question to be decided in cases of this type in which the insurer fails to obtain a favorable jury finding is whether the evidence *establishes conclusively*, according to recognized legal standards, that the insured was not in good health".

The record as a whole before us, does not *conclusively* establish that Loska had maladies of a *substantial* nature, or maladies which *seriously* or *materially* increased the risk to be assumed by the insurer on December 27, 1968 and the few days following.

And Dr. Jones testimony was that Loska was definitely not in good health in April and May 1969, but he had no knowledge of conditions on the date of the delivery of the policy. Moreover Dr. Jones did not know whether the lymphoma which caused Loska's death was in his body two months or ten years prior to his death.

There is evidence Loska appeared to be in good health on December 30, 1968, and the physical examination by defendant's physician reflected Loska to be in good health on December 14, 1968.

We cannot say there is "no evidence" to support the finding of good health; and the evidence falls short of establishing conclusively that the insured was not in

good health when the policy was issued or delivered.

Defendant's points and contentions have all been considered and are overruled.

Affirmed.

WILSON, J., not participating.